The Metropolitan Sanitary District of Greater Chicago, a Municipal Corporation, Petitioner-Appellee, v. Industrial Land Development Corporation, an Illinois Corporation, Defendant-Appellant (Respondent).

Gen. No. 52,414.

First District, First Division.

March 16, 1970.

James G. O'Donohue and Joel Murray, of Chicago, for appellant.

Allen S. Lavin, General Attorney, Foran & Wiss, Special Attorneys, of Chicago (Robert E. Wiss, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

The Metropolitan Sanitary District of Greater Chicago started eminent domain proceedings to acquire a parcel of property containing approximately 73 acres. This property is located in the Village of Riverdale, at 138th and Halsted Streets. The issue of compensation was tried before a jury and a verdict was rendered fixing the award at $450,000, upon which verdict the court entered judgment. The respondent appeals, seeking a new trial on the issue of just compensation.

The subject parcel of real estate is an irregularly shaped tract of approximately 73 acres, containing a deep clay pit of approximately 47 to 50 acres of the total tract, the depth of which is an average of some 30 feet below grade. The volume of the void within the pit area is between 2,272,500 and 2,400,000 cubic yards of space. The 23 to 26 acres of the tract outside the pit is land at grade improved with buildings of new value and four kiln chimneys which were formerly used by the prior owner for a brick manufacturing business.

Respondent presents six issues for review. First, the testimony of the witness Harry L. Shlaes was not strick-

en by the court. Shlaes testified that the property in question was zoned for light manufacturing and commercial uses and such zoning was one of the elements he took into consideration in his opinion of fair cash market value of the property. Other evidence established that the property was partially zoned for industrial and not commercial uses. Shlaes testified that in his opinion the fair cash market value for its highest and best use on July 6, 1966, was $365,000. Respondent argues that Shlaes considered an erroneous and improper element in determining value. However, Shlaes in answering counsel's question as to what factors he took into consideration said:

> "The general area in which the property is located; the transportation, public transportation to the area; the road access, which is good; two major thoroughfares there; the fact that it is a corner; the zoning, the highest and best use to which it could be put under that zoning; the fact that there were 73 acres of ground; the fact it was trapezoidal in shape; the fact that 47 acres were dug out to a depth of an average of approximately 30 feet and my knowledge of the market gained over the past almost forty years."

It has been held in Illinois that anyone who is acquainted with the property being condemned and has knowledge of value is competent to testify. The question of the degree of his experience or extent of knowledge is one of weight and not of competency. The Illinois Supreme Court has specifically held that differences in zoning does not render other types of evidence of value inadmissible. City of Evanston v. Piotrowicz, 20 Ill2d 512, 170 NE2d 569 (1960).

> "In our opinion, as applied to the facts in the instant case, the existence of zoning dissimilarity does

not constitute such a degree of dissimilarity as to render the evidence of such sales incompetent." (Pp 522–23.)

Respondent calls our attention to City of Chicago v. Lord, 276 Ill 533, 115 NE 1 (1917). This was a condemnation case in which 42 feet of Lord's property was taken for widening of a street. Witnesses for the City were permitted to testify that the remainder of the lot would still be a corner lot and would possess a substantial value. The Supreme Court in reversing the trial court said:

> "This was an improper element to consider in determining the value of the property taken. Appellants were entitled to the actual value of the property taken, without regard to the effect, if any, the proposed improvement would have upon the part of the lot not taken." (P 536.)

In City of Chicago v. Giedraitis, 14 Ill2d 45, 150 NE2d 577 (1958), the court held that valuation based upon future rental income was improper. In City of Chicago v. Central Nat. Bank, 5 Ill2d 164, 125 NE2d 94 (1955), the testimony of a witness who based his valuation upon the amount of business being done on the premises was held to be speculative and an improper basis for valuation. We find that the remaining cases cited by respondent have no relevance to the issues involved in the case under consideration. Sole reliance on an improper element of damage in an eminent domain case is objectionable. Witness Shlaes testified as to all the elements he considered in reaching his valuation figure. As has been stated before, anyone acquainted with the property being condemned and has knowledge of value, is competent to testify. The degree of his experience and extent of knowledge is one of weight and not competency.

Respondent relies on Department of Public Works and Buildings v. Drobnick, 14 Ill2d 28, 150 NE2d 593 (1958). In applying the Drobnick case, respondent indulges in suppositions which are not present in the court's decision. Drobnick does not involve a question of the effect of consideration of an improper zoning by a witness. The specific question in that case was the right of the petitioner to reopen the case. In Drobnick, the court said, at page 35:

> "We have repeatedly held that where the evidence as to value is conflicting in a condemnation proceeding, and the jury, having viewed the premises, fixes the amount of the compensation for land taken and of damages to land within the range of the testimony, the award will not be disturbed unless there is something in the record which shows that the verdict was a clear and palpable mistake or the result of passion and prejudice, or unless there was some erroneous ruling which might have misled the jury."

In Forest Preserve Dist. v. Krol, 12 Ill2d 139, 145 NE 2d 599 (1957), at page 145, the court said:

> "The jury had before it a full description of the property and knew the use to which it had been put. They heard all of the witnesses and observed their demeanor on the stand. They viewed the premises. All of the appellee's witnesses were competent, and the value to be accorded their testimony was a matter for the jury. (Kankakee Park Dist. v. Heidenreich, 328 Ill 198.) The $100,000 verdict was within the range of the testimony (a low of $82,500 to a high of $262,500, with a recent sales price of $75,000), and there is nothing to indicate they were influenced by prejudice or passion or that they made a clear and palpable mistake in so

398

assessing just compensation. Dept. of Public Works and Bldgs. v. Finks, 10 Ill2d 15."

Respondent next finds fault with the trial court's admission of the sale price of the property in question some 5½ years prior to the filing of the petition to condemn without any showing that there had been no change in conditions or marked fluctuations in values since the sale of the property in question. Respondent urges that without the proper foundation, the sale price should not have been admitted, and that the respondent was prejudiced by its admission. The record shows that witness Shlaes testified he had known the property in question since 1959; that the same buildings were present as in 1959 through 1961; and that there were no substantial changes in the pit area of the property. He testified that he took into consideration the market value over the past 40 years. Another witness for the petitioner, Clem Mulholland was asked: "Has there been any substantial change in the market in this particular area around Chicago between 1960 and the present date? . . . ." He answered: "In my opinion there has been no substantial change."

In Nichols on Eminent Domain (3rd Rev ed 1969), Vol 5, § 21.2, it is stated:

> "The general rule is that evidence of the price paid for property which is the subject of appropriation proceedings is admissible, if the following conditions are satisfied:
>
> "(a) The sale must be bona fide;
> "(b) The sale must be voluntary, not forced;
> "(c) The sale must have occurred relevantly in point of time; and
> "(d) The sale must cover substantially the same property which is the subject of the appropriation action."

399

■ Remoteness in time alone cannot be considered. All the facts and circumstances of each case must be considered. Respondent directs our attention to the fact "that in today's more complex world of population and industrial explosion, suburban growth and development, economic inflation and advanced transportation and communications, a new rule of law prohibiting the admission in evidence of a sale price four or five years remote, notwithstanding the facts and circumstances of the case, is both fair and necessary to protect landowners and to insure them the just compensation required by the Federal and State Constitutions when the property is taken by eminent domain." Respondent offered some testimony as to the increased need, scarcity and value of pit property and holes in the ground. Respondent's witnesses did not convince us that there is so-called "increased need and scarcity" as claimed by the respondent.

■ As to respondent's objection that the petitioner failed to introduce the best evidence of the sale price or to properly account for the absence of same, the record unequivocally shows that petitioner's witness John J. Waldron, who was the attorney for the seller and who attended the closing of the sale, knew the consideration paid. There is no question as to the accuracy of the price involved. The absence of the best evidence under the circumstances here involved in no way prejudiced the respondent.

■ We now come to the third point raised by the respondent that there was error in restricting the cross-examination of petitioner's witness, Clem Mulholland, with respect to the income method of appraising. Mr. Murray, respondent's attorney asked: "Did you appraise this property with an eye to the income method of appraising?" The answer was: "Yes, I did." The next question, "How did you appraise the property with regard to the income method of appraising?," was objected to and

400

the trial judge sustained the objection. It has been held in Illinois that while an appraiser can consider different methods of appraisal, the separate values or results under such methods are not admissible and cannot be made the sole basis of valuation. Chicago Land Clearance Commission v. Darrow, 12 Ill2d 365, 146 NE 2d 1 (1957); Department of Public Works v. Pellini, 7 Ill2d 367, 131 NE2d 55 (1955).

Respondent's fourth contention is that the trial court erred in striking the testimony of George C. Duffy, who stated that in his opinion it would take 12 years to fill the pit portion of the property here involved. The record reveals a lengthy discourse between both counsel and the trial judge relating to Duffy's testimony but it does not show that the court struck this portion of his opinion.

■ As to the fifth contention, we find no error in permitting cross-examination of the witness George C. Duffy, as to the lease on the subject property. There was no testimony that the lease was between two corporations which were supposed to be owned and controlled by one family. Although this cross-examination was beyond the scope of direct examination and was not part of the case in chief, in eminent domain cases it is not improper to cross-examine a valuation witness on the factors he took into consideration in reaching his opinion of value. The Supreme Court stated in Spohr v. City of Chicago, 206 Ill 441, 69 NE 515 (1904), at 444–5:

> " 'While, in the examination in chief, the expert can only be questioned in a general way . . . the cross-examiner is entitled in every instance to demand a free disclosure, minutely and in detail. . . .' Upon cross-examination, great latitude is allowed. . . . [A] large discretion is necessarily left to the trial judge. . . . [C]ross-examination should not be excluded on subjects . . . included in the examina-

tion in chief. . . . [S]o far as the cross-examination . . . relates either to facts in issue or facts relevant to the issue, it may be pursued as a matter of right."

We do not believe that the jury was misled or confused. ■ Respondent also finds fault with the trial court's refusal to give the jury the following respondent's instruction No. 6:

"You are instructed that you may also take into consideration in determining the fair cash market value of respondent's property, any special value shown by the evidence in connection with the highest and best use of the property on June 6, 1966."

This instruction is not one listed or recommended in Illinois Pattern Instructions (Eminent Domain). The jury heard the opinions of experts as to the highest and best use of the land in question. The other instructions have advised the jury properly and adequately. We find no error in the refusal of the court to give this instruction.

It is our belief that this case was tried well and was free from error. The verdict is well within the limits of the testimony and is not the result of passion or prejudice.

The judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.