(No. 49603

THE DEPARTMENT OF CONSERVATION, Appellee, v. ASPEGREN FINANCIAL CORPORATION, Appellant.

*Opinion filed September 19, 1978.*

304

Robert A. Downing and Arlene C. Erlebacher, of Sidley & Austin, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield (Frank S. Righeimer, Jr., and Leo N. Cinquino, Special Assistant Attorneys General, of Chicago, of counsel), for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

An action was brought by the plaintiff, the Department of Conservation of the State of Illinois, to condemn an unimproved tract of 160 acres in Lake and McHenry Counties owned by the defendant, Aspegren Financial

Corporation. An award of $275,272 was made by the jury on which judgment was entered. The defendant appealed, and the Appellate Court for the Second District affirmed (47 Ill. App. 3d 118). We allowed the defendant's petition for leave to appeal.

The defendant purchased the tract in December 1970 for $162,000, or about $1,000 an acre, with the stated intent of developing it as a recreational-residential community. In January 1971 the State announced its intention to acquire the tract as part of a proposed expansion of Chain of Lakes State Park. A petition to condemn the tract was filed on July 9, 1974.

The underlying dispute between the parties relates to the market value of the land on the latter date. On this appeal the defendant assigns numerous errors relating to the admission into evidence of testimony offered by the plaintiff, and to the exclusion of testimony offered by the defendant, in each case pertaining primarily to the question whether other property sold in the area was comparable to that owned by the defendant. The defendant also objected to the admission into evidence of the price at which it had purchased the subject tract in 1970.

The plaintiff put on two expert witnesses to testify as to the market value of the tract. One estimated it as $1,750 per acre. The other estimated it as $1,500 per acre. The defendant put on three expert witnesses whose estimates ranged from $3,000 to $3,500 per acre.

The defendant's initial contention seems to be that the plaintiff was not entitled to have admitted into evidence the price at which the subject tract had been purchased by the defendant because no "foundation proof" was made that that price was as great as the value of the property on the date when the condemnation petition was filed. As a result, the defendant states, the onus was placed upon it to offer evidence that the price paid in 1970 was less than the value of the property in

1974. The defendant asserts that this allocation of proof runs contrary to the decisions of this court in *Forest Preserve District v. Krol* (1957), 12 Ill. 2d 139, and *Department of Public Works & Buildings v. Bloomer* (1963), 28 Ill. 2d 267.

In *Krol* the defendants had purchased the property in question for $75,000 in December 1951 with the purpose of continuing its existing use as a public golf course, which plaintiff contended was its best and highest use. The plaintiff's expert witnesses testified that the value of the property as of the date of filing of the condemnation petition in September 1954 was in the neighborhood of $85,000. The defendants, who maintained that the best and highest use was for subdivision purposes, offered expert testimony that the value was from $210,000 to $262,000. Judgment was entered on an award for $100,000, and this court affirmed. It stated:

"At the time of sale the tract was being used for a golf course. The sale was, under the facts of record here, not too remote, and no error was committed in allowing evidence thereof. When a parcel of land is taken by eminent domain, the price the owner paid for it is a fact which may be considered in determining its value, provided the sale was recent and was a voluntary transaction, with no change in conditions or marked fluctuation in values having occurred since the sale. *Sanitary District of Chicago v. Corneau,* 257 Ill. 93; *Forest Preserve Dist. v. Hahn,* 341 Ill. 599." 12 Ill. 2d 139, 147.

In *Bloomer* the time which elapsed between the purchase and the filing of the petition was four years. The court followed the principle stated in *Krol* (see 28 Ill. 2d 267, 274), and again the judgment of condemnation was affirmed. We find nothing in either of these decisions supporting the defendant's claim that foundation testi-

mony must be put in by the plaintiff that the purchase price fairly reflects the value of the property at the time of condemnation. See also 5 Nichols, Eminent Domain sec. 21.2 (rev. 3d ed. 1975).

Even longer periods between the purchase and the condemnation petition than that present here have been accepted in some decisions of the appellate court. (See, e.g., *Department of Public Works & Buildings v. Gieseking* (1969), 108 Ill. App. 2d 105 (5 years); *Metropolitan Sanitary District v. Industrial Land Development Corp.* (1970), 121 Ill. App. 2d 393 (5½ years).) The weight to be given the testimony as to the present value of the property remained of course a question for the jury to decide in the light of all the testimony.

The defendant also objects to the refusal of the trial court to give a tendered instruction which provided in part that the jury should not consider the 1970 purchase price as probative of the 1974 value "unless no change in conditions or marked fluctuation in value has occurred since 1970." In denying this request the trial court stated that the instruction was defective in singling out one element, as to which the court had already instructed the jury. Since the defendant has not included in its excerpts from the record all the instructions given, this court cannot pass on this objection. *Dempski v. Dempski* (1963), 27 Ill. 2d 69, 77.

The plaintiff offered into evidence testimony as to several sales of other property which it contended were comparable. Of those sales as to which evidence was admitted, one was a 46-acre tract two miles away from the subject tract, which was sold in May 1974 for $1,300 an acre. The second was a 120-acre tract, located within three miles from the subject property, which was sold in April 1972 for $1,000 an acre. This land was subdivided into two parcels, and in November 1973 each parcel was sold at $1,500 per acre. The third sale was of a 122-acre tract

located directly across a road from the subject property, which was sold in September 1970 for $900 an acre.

The defendant's contention that none of these tracts was comparable rests primarily on the claim that the topography of the subject tract was rolling and that the tract was from 60% to 75% wooded, thus providing excellent sites for homes and a setting for riding trails, whereas the other properties were flat and much less heavily wooded, and thus unsuitable for the defendant's proposed project. The appellate court correctly disposed of this argument by observing (47 Ill. App. 3d 118, 125):

"While the property involved in the comparable sales offered by the State may have been less desirable in meeting the qualifications of the defendant for his particular concept of a horse-oriented residential and recreational area, we think the land in question, being in the immediate area, and zoned the same, was not excludable on that ground. The test is market value and the defendant's subjective test as to what suited him best for a particular purpose and a particular kind of development is not controlling as to what is a comparable sale."

*Cf. Housing Authority v. Kosydor* (1959), 17 Ill. 2d 602, 606; *City of Chicago v. Provus* (1953), 415 Ill. 618; 4 Nichols, Eminent Domain sec. 12.22(2) (rev. 3d ed. 1977).

Testimony offered by the defendant as to two tracts claimed to be comparable was excluded. The first was a tract of approximately 327 acres located in Lake County 22 miles by road from the subject tract. This property had been acquired by the defendant following the State's announcement in 1971 of its plan to expand Chain of Lakes State Park. At that time Oliver Aspegren, Jr., the sole owner of the defendant, suspended development activities for the subject site, and conducted an extensive search for other property which, as stated in the defend-

ant's brief, "would be equally suitable for development of his planned residential-recreational complex." The Lake County property was not scheduled for inclusion in the park expansion, and Aspegren testified that it was compatible with the type of development which he had intended for the subject site. He purchased this replacement tract in April 1972 for $5,500 an acre.

The trial court excluded testimony on the replacement property because of its distance from the subject site, and because, unlike the latter, it had ready access to water supply and sewer facilities, and was located in a populous and developed area where real estate values would be higher. Admission and exclusion of evidence as to comparable sales rests largely in the discretion of the trial court. (*Forest Preserve District v. Krol* (1957), 12 Ill. 2d 139, 148.) We do not believe that the trial court abused its discretion here. And while the defendant may have regarded this tract as particularly suitable for his purposes, that, as previously noted, is not a relevant criterion.

The second tract was composed of some 213 acres located one-half a mile from the subject site. A contract for the purchase of this land by the defendant for $5,000 an acre was drawn up in 1974, but the sale never took place, since this tract also lay within the area to be acquired for enlargement of the State park, and the plaintiff accordingly filed a petition to condemn it about a month after the contract was signed.

The trial court found that in location, size, and topography the land was comparable to the subject property, but nevertheless excluded evidence of this sale as not comparable. The trial court noted that there were various qualifications attached to the sale contract as well as a difference in zoning. The court also pointed out that the contract provided for the return to the defendant of the earnest money, amounting to only $1,000, if condemnation proceedings, which were then known to be immi-

nent, should be instituted.

In *City of Chicago v. Harrison-Halsted Building Corp.* (1957), 11 Ill. 2d 431, this court upheld the exclusion of an offer to purchase land from the defendant in a condemnation case. The court stated:

> "The offer must be made in good faith, by a man of good judgment, acquainted with the value of the real estate and of sufficient ability to pay. It must be for cash and not for credit or in exchange and it must be determined whether made with reference to the fair cash market value of the property or to supply a particular need or fancy. Private offers can be multiplied to any extent, for the purpose of the cause, and the bad faith in which they were made would be difficult to prove. The reception of this kind of evidence stands upon an entirely different footing from evidence of actual sales between individuals or by public auction. The question of admission is one involving the discretion of the court and the decision of the court will not be disturbed unless it is manifestly against the weight of the evidence. The burden is upon the party seeking to have such evidence admitted to establish a sufficient foundation by showing that the offer was *bona fide,* for cash, and made by a person able to comply with the offer if it were accepted." 11 Ill. 2d 431, 438.

That case involved an offer to purchase the parcel owned by the condemnee, whereas here it is the condemnee which offered to purchase other, allegedly comparable property. We believe that the same rule should apply, however, and we hold that the offer was properly excluded.

The defendant further objects to the trial court's refusal to permit the introduction of certain items of

evidence said to relate to the probability of rezoning. To appreciate the point of this objection it must be noted that no issue is presented here respecting the type of use permitted on the defendant's tract under the applicable zoning ordinances. Witnesses for both the plaintiff and the defendant testified that the best and highest use of the land was for residences, the use intended by the defendant. Half of the tract lay in Lake County and the other half in McHenry County. The zoning in Lake County was for agriculture, that in McHenry County for farming. In each case residences were a permitted use.

So far as we can make out from the briefs of the parties and the excerpts from the record, a zoning problem arose only because of minimum-lot-size requirements in each county. In the Lake County portion of the tract the minimum was 200,000 square feet, which is between four and five acres. In the McHenry County portion the minimum, prior to May 14, 1974, was 48,000 feet, which comes to about 1 1/8 acres. On May 14, prior to the date when the petition to condemn was filed, the McHenry County ordinance was amended to increase the minimum to five acres.

There was testimony on behalf of the defendant that prior to the 1974 amendment it would have been legally permissible to erect about 20 homes in Lake County and about 72 in McHenry County, and that the defendant's initial development plan called for a total of 61 homes, far less than the aggregate of about 90 permitted under the ordinances. It is not possible to ascertain the total number of units which could have been built after the amendment to the McHenry County zoning ordinance, because the record before us does not disclose how many units were proposed for each of the two counties involved.

It appears that even prior to the 1974 amendment, while the total acreage of the tract could legally sustain the total number of dwelling units proposed, the individual

homes were to be "clustered" in such a fashion that the minimum acreage per unit was less than that required under the two ordinances.

Aspegren testified that on December 8, 1970, he attended a meeting with the executive directors of the plan commissions of each county at which he outlined his proposal. One of these officials, Gerald Estes, made notes of the meeting and gave a copy of them to Aspegren. Estes was not called to testify, and the trial court correctly refused to admit these notes in evidence.

Following the December meeting, Aspegren testified, he commissioned a firm to draw up a plan for his proposed development. That plan was never presented to the planning authorities of either county, however, because in January 1971, as previously noted, Aspegren learned of the plaintiff's intention to acquire the property, and he abandoned further exploration into its developmental possibilities. The defendant's tender of the plan was also refused by the trial court.

The third item of evidence allegedly bearing on the question of the probability of rezoning was a group exhibit consisting of some 60 amendments to the zoning ordinances of Lake County and McHenry County changing the zoning from agricultural use to some denser use. Counsel for the defendant represented to the court that these changes had been made sometime in the 1970's, that they included changes made throughout each county, and that the exhibit was not offered as evidence of rezoning of land located near the subject property. In refusing admission to this exhibit the court made clear that it was not prejudging the admissibility of any zoning amendments which might relate to nearby property.

At this point in the proceedings the defendant called his three valuation witnesses. As noted earlier in this opinion each of them testified that the highest and best use of the tract was residential-recreational. None of them

was asked for his opinion as to the value of the property were it to be rezoned so as to permit minimum lot areas less than those prescribed in the applicable zoning ordinances.

The defendant thereafter called as a witness Rolf C. Campbell, a land planner who was not qualified as an expert witness on land values. Campbell had prepared a plan for a possible use of the subject tract. It was not shown by the testimony that this plan incorporated the provisions of the earlier one commissioned by the defendant. Campbell was not asked to express an opinion as to the value of the land if developed in the manner indicated by his plan, nor was he asked to testify about the effect on value of a probable rezoning of the property. On the contrary, his testimony was that the tract would accommodate 32 residences under the requirements of the existing zoning ordinances as to minimum acreage without the need of any rezoning.

At this point the defendant retendered portions of its group exhibit which had now been revised so as to include only those zoning changes for property located from 1½ to 7½ miles away from the subject property.

The trial court refused to admit Campbell's development plan in evidence. The court also refused to admit the revised exhibit relating to zoning amendments for the reason that there had been no testimony, either by Campbell or by any other witness, as to the amount by which rezoning would increase the value of the land.

The record before us supports the trial court's rulings under the principles laid down in *Department of Public Works & Buildings v. Rogers* (1968), 39 Ill. 2d 109. In *Rogers* the property sought to be acquired was a one-acre tract zoned residential, which the plaintiff contended was its best and highest use. The defendants contended that the best and highest use of the property was a filling station, a use which was not permitted under the existing

zoning. According to the testimony, the value of the property if used as a filling station substantially exceeded its value if used for residential purposes.

The court held that the trial court erred in excluding a recent ordinance which granted a special use for the construction of a shopping center on a 50-acre tract located one-half mile away on the same highway. The rationale of the decision was that the ordinance could be considered by the jury as evidence of a reasonable probability that the defendant's property might be rezoned in the near future. *Rogers* also left intact the part of the appellate court's decision which held that the trial court did properly exclude a witness' opinion testimony as to the probability of obtaining a zoning change on the subject property. (See 78 Ill. App. 2d 141, 143-44.) In this connection the appellate court relied on *Park District of Highland Park v. Becker* (1965), 60 Ill. App. 2d 463, a case cited with approval in *Rogers*. See also *Department of Transportation v. Western National Bank* (1976), 63 Ill. 2d 179, 185.

The holding of *Rogers* is thus that probability of a zoning change is significant only to the degree that such a change would result in an increase in value, in that a prospective buyer would take that factor into account in determining how much to pay for the land.

If evidence is introduced on the issue of a reasonable probability of rezoning, the owner is entitled to have appropriate instructions given to the jury on that issue. (*Department of Public Works & Buildings v. Association of Franciscan Fathers* (1977), 69 Ill. 2d 308.) The question of instructions is of course not presented by the instant case.

*Rogers* also stands for the proposition that a probability of rezoning is not properly shown by speculation as to what a zoning board might do in response to an application by the owner, but rather by what the board

has done in recent cases. The defendant failed to translate any type of zoning relief into dollar terms. So far as McHenry County is concerned, moreover, the most recent action of the county had been to make the zoning more' rather than less restrictive.

The defendant urges finally that the market value of its tract should have been determined on the basis of the McHenry County ordinance prior to its amendment, since the defendant would then have been able to put up a substantially larger number of homesites. The defendant concedes--that market value is normally determined as of the date when the petition to condemn is filed, but urges that the three-year period between the initial announcement of the proposed acquisition and the filing of the petition makes application of the ordinary rule inequitable. We do not consider that the 1971 announcement by the State amounted to a *de facto* taking, however (*City of Chicago v. Loitz* (1975), 61 Ill. 2d 92), and the defendant's counsel admitted both before the trial court and in oral argument here that the county's decision to rezone was fortuitous, in that the plaintiff played no part in it.

For the reasons given in this opinion, the judgment of the appellate court is affirmed.

*Judgment affirmed.*