THE CITY OF CHICAGO, Petitioner-Appellee, *v.* BANK OF RAVENSWOOD
*et al.*, Defendants-Appellants.

First District (3rd Division)    No. 79-1710

Opinion filed January 28, 1981.

Hoellen, Lukes, Halper & Abramson, of Chicago (Edward J. Halper, of counsel), for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Robert R. Retke and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, the City of Chicago, on November 6, 1978, brought this eminent domain proceeding to acquire certain real estate owned by defendant, Bank of Ravenswood, individually and as land trustee. After a trial without a jury, the trial court entered judgment awarding defendant $500,000 as just compensation for the property taken. The court subsequently denied defendant's motions to vacate or reconsider the judgment

and for abandonment, and granted possession to petitioner conditioned upon the deposit of a $65,000 surety bond. Defendant appeals.

The subject property is a 45,000 square foot rectangular tract located at the southwest corner of Lawrence and Damen Avenues in Chicago. The parcel is improved with a 12,000 square foot single-story brick structure, formerly a supermarket, and an asphalt paved parking lot. Both Lawrence and Damen Avenues are arterial streets served by public transportation. A rapid transit station is located one block from the site. Adjacent properties are used for retail and commercial purposes, and the surrounding area consists of single- and multiple-family residential dwellings. The property is zoned for retail-commercial uses, and it is agreed that such usage would be the highest and best use of the property. Defendant's banking facility is situated approximately two blocks from the subject property.

Two expert witnesses testified at trial for petitioner as to the fair cash market value of the subject property. James L. Krueger, a real estate appraiser in Chicago for more than 10 years, inspected the subject property on September 13, 1978. Krueger recited various factors he considered in arriving at an opinion as to the property's value. Such factors included: present zoning of the site; development of the property; surrounding property and land use; trend of development in the area; the general community; current market conditions in the vicinity; and a survey of similar properties sold in the area. Over defendant's objection, Krueger was allowed to state that the fair cash market value of the subject property on the date of the filing of the petition to condemn was $335,000.

On cross-examination, Krueger explained that in evaluating the current market condition, he relied upon information derived from active real estate brokers in the area, file data of other comparable sales, conversations with local residents, and observations made while driving through the neighborhood. Although a licensed real estate broker, Krueger was not actively engaged in buying and selling real estate. Information pertaining to comparable sales was obtained from third parties. Krueger stated that a recent sale of the subject property would be an important factor in establishing fair market value. Yet he maintained that knowledge of a recent sale of the subject property to defendant for $565,000 would not have affected his opinion, inasmuch as defendant might have paid a premium to acquire a facility within close proximity to the bank. Krueger was not suggesting fraud or collusion in defendant's acquisition.

Terrence O'Brien testified for petitioner that he was an appraiser in Chicago for 11 years. He inspected the subject property on August 2, 1978. O'Brien, in determining the fair cash market value of the property, considered existing zoning and land use; availability of utilities and water; the need and demand for various uses of the property under the present

zoning classification; and a survey of similar sales. O'Brien listed the sizes and locations of five comparable supermarket sales. O'Brien testified that the fair cash market value of the property on the date in question was $360,000.

On cross-examination, O'Brien related that during the past five years he participated in at least five real estate transactions per year. He was not involved, however, in the comparable sales he had mentioned. Although aware of an earlier sale of the subject property for $565,000, he did not accord it weight because he believed defendant had a special use for the property. In general, property values had increased at a rate of one percent per month. The court denied defendant's motion to strike O'Brien's testimony.

Allan Hoekstra, property manager for Jewel Companies, Inc., testified for petitioner about a sale of comparable property located on Montrose Avenue, less than two miles from the subject property. The purchase price for the Montrose property, also a vacant supermarket, was $352,500. The Montrose property was smaller, and Hoekstra believed that the subject property was more desirable. Hoekstra further testified that in 1977, the subject property was offered for sale for $650,000, but that in 1978 the price was reduced to $550,000.

Saul D. Binder, executive vice-president and chief loan officer of the Bank of Ravenswood, testified that defendant acquired the subject property from Commonwealth Investment Corporation on August 7, 1978, for $565,000. Earlier, on June 7, 1978, Commonwealth had entered into an agreement with a subsidiary of Jewel to purchase the subject property for $550,000. Defendant then acquired Commonwealth's rights under its contract with Jewel by paying Commonwealth an additional $15,000. The agreement between Jewel and Commonwealth precluded any retail or wholesale pharmacy operation. Defendant sought and obtained a modification to allow the development of a pharmacy because one of the potential tenants for the subject property was a medical group.

Binder testified that he had been involved in the practice of commercial lending for 19 years, and that in a three-month period in 1978, he had participated in approximately 100 commercial lease, mortgage and sale transactions. Based upon his knowledge of the real estate market and the area involved, Binder determined that on July 17, 1978, the subject property was worth at least $565,000. At the time it entered into the contract with Commonwealth, defendant was aware that petitioner was examining the property for possible acquisition. Defendant did not, however, receive notice of petitioner's intent to acquire the property until after execution of the contract.

On April 3, 1979, the trial court found just compensation to be

$500,000, and ordered petitioner to deposit the award within 60 days. On May 2, 1979, defendant filed its motion to vacate or reconsider the judgment. On May 29, 1979, petitioner deposited the $500,000 award with the county treasurer. Petitioner failed to deposit $6,263.58, the amount representing interest and costs, until June 6, 1979. On June 6, 1979, petitioner requested possession of the subject property. Defendant filed an answer asking, in part, that possession by petitioner be conditioned upon its posting a surety bond in the amount of $100,000. On June 14, 1979, defendant filed a motion for abandonment and entry of judgment against petitioner contending that petitioner's failure to make a timely deposit of the interest and costs constituted an abandonment of petitioner's intent to acquire the subject property. The trial court denied defendant's motions and granted petitioner possession of the subject property upon the posting of a $65,000 surety bond.

On appeal defendant initially contends that the trial court's finding of just compensation was contrary to the manifest weight of the evidence. In support of its position, defendant urges that the trial court erred in overruling its objections to the competency of petitioner's expert appraisal witnesses. Defendant objects to their competency on the ground that their valuation opinions were based on hearsay and lacked foundation. Defendant also argues that the court disregarded the recent voluntary sale of the subject property as the best and clearest evidence of fair market value.

An award of just compensation which is within the range of the evidence will not be disturbed except in cases of passion, prejudice, or clear and palpable mistake. (*Department of Public Works & Buildings v. Klehm* (1973), 56 Ill. 2d 121, 306 N.E.2d 1, *cert. denied* (1974), 417 U.S. 947, 41 L. Ed. 2d 667, 94 S. Ct. 3072.) In Illinois, any person who is familiar with the property being condemned and has knowledge of real estate values in the vicinity is a competent witness. (*Forest Preserve District v. Krol* (1957), 12 Ill. 2d 139, 145 N.E.2d 599.) The question of the extent of a witness' knowledge or degree of his experience goes to the weight accorded his testimony, not to his competency. (*Metropolitan Sanitary District v. Industrial Land Development Corp.* (1970), 121 Ill. App. 2d 393, 257 N.E.2d 532.) Such witness may testify to the value of the subject realty even though he is not engaged in the buying and selling of similar properties in the vicinity. (*Department of Public Works & Buildings v. Oberlaender* (1969), 42 Ill. 2d 410, 247 N.E.2d 888; *Department of Public Works & Buildings v. Hufeld* (1966), 68 Ill. App. 2d 120, 215 N.E.2d 312.) Moreover, an otherwise competent valuation witness is not rendered incompetent merely because he bases his opinion, in part, on hearsay knowledge of other sales. *Department of Public Works & Buildings v.*

*American National Bank & Trust Co.* (1976), 36 Ill. App. 3d 439, 343 N.E.2d 686; *Forest Preserve District v. Harris Trust & Savings Bank* (1969), 108 Ill. App. 2d 65, 247 N.E.2d 188.

■■ The trial court properly allowed petitioner's expert witnesses to render their opinions as to the fair cash market value of the subject property. According to their testimony, their opinions were based on several relevant factors. That they based their opinions, in part, upon the knowledge of comparable sales in which they did not participate, does not render their testimony inadmissible. The case of *Trustees of Schools v. Kirane* (1955), 5 Ill. 2d 64, 124 N.E.2d 886, upon which defendant relies, is totally distinguishable from the present case. The court there found that the expert witness was incompetent to testify since he had no actual knowledge of real estate values in the city involved except what he had been told by others.

Defendant further urges that the court erred in permitting petitioner's two witnesses to give valuation opinions because they disregarded the recent sale of the subject property to defendant as evidence of value. The two witnesses did not disregard the recent sale, and both stated that such a sale is an important factor in determining value. They both testified, in substance, that their estimates of value were not affected by the price paid by defendant because they believed defendant might pay a premium in order to purchase the property for bank-related purposes. The trial court did not err in allowing the two witnesses to give their opinions as to the fair cash value of the subject property.

■■ ■ We find no merit in defendant's contention that the trial court erroneously disregarded the recent sale of the subject property as the best or conclusive evidence of value. Evidence of a price paid for property in a recent sale is considered most important in determining present value. (*Morton Grove Park District v. American National Bank & Trust Co.* (1976), 39 Ill. App. 3d 426, 350 N.E.2d 149.) Yet, even if the sale occurred very near the time of taking, evidence of such sale is not conclusive but is merely to be considered with all the evidence presented. (5 Nichols on Eminent Domain §21.2 (3d ed. 1979); see *Department of Conservation v. Aspegren Financial Corp.* (1978), 72 Ill. 2d 302, 381 N.E.2d 231.) Nothing in the record suggests that the court disregarded the recent sale, and it was not error for the court to fail to accord the sale conclusive weight. Petitioner's expert witnesses placed the fair cash value of the subject property in a range from $335,000 to $360,000. Another witness for petitioner presented a comparable sale at a price of $352,500. Binder testified that the property was worth at least $565,000, and that was the purchase price paid by defendant. Clearly, the $500,000 award fixed by the trial court as just compensation was well within the range of the

evidence adduced. That award was not contrary to the manifest weight of the evidence.

Defendant next contends that, notwithstanding petitioner's timely deposit of the $500,000 award with the county treasurer, petitioner abandoned the condemnation proceedings by failing to deposit the interest and costs within the 60 days specified in the judgment.

■■ In *County Board of School Trustees v. Boram* (1962), 26 Ill. 2d 167, 186 N.E.2d 275, the court addressed a similar contention where the petitioner failed to deposit any of the compensation award within the time specified. The court indicated that failure to pay full compensation within the time fixed by the court constitutes an abandonment, but further noted that the time limitation does not commence until the amount of compensation has been finally determined. The court concluded that, in view of defendant's filing of a post-trial motion and appeal, the compensation award had not yet been determined with finality and the time limitation would not begin to run until it had been so determined. Similarly, in the present case, defendant filed a motion to vacate or reconsider, and that motion operated to stay the time for payment by petitioner. The error in not depositing interest and costs did not constitute abandonment.

Defendant finally contends that the trial court erred in granting possession of the subject property to petitioner. Specifically, defendant complains that the surety bond set by the court was inadequate and that restrictions should have been imposed upon petitioner's possession.

Section 13 of the Eminent Domain Act provides that when a party in whose favor an award has been entered appeals, the condemnor shall, notwithstanding, have the right to use the property upon the posting of bond, with sufficient surety, conditioned for the payment of such compensation as may be finally adjudged in the case. (Ill. Rev. Stat. 1979, ch. 47, par. 13.) Determination of the amount of bond required is within the discretion of the trial court. *Morton Grove Park District v. American National Bank & Trust Co.*

Defendant's post-trial motion sought to increase the compensation award to $565,000. In its response to petitioner's request for possession, defendant asked that possession be conditioned on a $100,000 surety bond. A surety bond of $65,000 was adequate to cover the increment requested, and there was no abuse of discretion by the trial court.

In challenging the grant of possession to petitioner, defendant does not allege any actual harm sustained but rather argues that if petitioner had later abandoned the proceedings, defendant might have been left with substantially changed structures. In view of our conclusion that no abandonment occurred, as well as petitioner's deposit of compensation

58

and the requisite bond, we find no error in the trial court's grant of possession to plaintiff.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI, P. J., and McGILLICUDDY, J., concur.