AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Julian Geller and Nathan Geller, Plaintiffs-Appellants,

v.

K–MART CORPORATION, formerly known as S.S. Kresge Company, Defendant-Appellee.

AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Plaintiffs, Counterdefendants-Appellees,

v.

K–MART CORPORATION, formerly known as S.S. Kresge Company, Defendant, Counterplaintiff-Appellant.

Nos. 82–2253, 82–2319.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1983.

Decided Sept. 13, 1983.

Nancy M. Barrett, Feiwell, Galper & Lasky Ltd., Chicago, Ill., for plaintiffs-appellants.

Stephen H. Pugh, Jr., Chapman & Cutler, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, NICHOLS * and PELL, Circuit Judges.

NICHOLS, Circuit Judge.

This is an appeal from a jury verdict awarding damages in the amount of $205,700 for breach of a landlord's obligation to repair and maintain leased premises. For reasons that follow, we affirm the district court's partial summary judgment construing landlord's obligation under the Downers Grove lease; we refuse to grant landlord's request for a determination that it did not breach its obligation to paint the exterior of the premises; we reverse the district court's ruling excluding expert testimony on diminution of rental value; and we grant a new trial on the issue of damages.

## Background

Appellants-cross-appellees, plaintiffs below, are American National Bank and Trust Company of Chicago, land trustee and title owner of the several parcels of real estate involved herein, and Julian Geller and Nathan Geller, beneficiaries of the land trust and lease assignees ("landlord"). Appellee-cross-appellant is K-Mart Corporation, a retail chain (K-Mart, tenant, or lessee). In January 1977, landlord filed suit in an Illinois state court seeking a declaration that it was entitled to additional rents from K-Mart due to expansion of a sublessee supermarket located on the property leased by K-Mart in Downers Grove, Illinois. K-Mart removed the suit to federal court on diversi-

---

* The Honorable Philip Nichols, Jr., of the United States Court of Appeals for the Federal Circuit, is sitting by designation.

ty grounds and counterclaimed for breach of landlord's obligation to repair and maintain the Downers Grove store. The district court granted summary judgment for landlord as to liability on the original complaint, and the court denied K-Mart's motion for summary judgment on its counterclaim.

After denial of its motion for summary judgment, K-Mart filed an amended counterclaim adding four counts to its original count for breach of obligation to maintain and repair. Each count is based on the alleged breach as relating to five stores. Although each store is operated under a separate lease, the lease provisions relevant here contain no material differences.

On August 12, 1980, after submission of a written stipulation of fact regarding the provisions of the leases relevant to the amended counterclaim, and after oral argument, the district court granted partial summary judgment for both landlord and lessee on various issues of landlord's legal obligation under the lease to repair and maintain the premises. The issues of liability and damages were set for jury trial.

At trial, K-Mart pursued two theories of damages. First, K-Mart sought remuneration for "out-of-pocket" expenses incurred in maintaining the premises. These expenses were estimated at $88,700 and represented costs incurred by lessee for minor maintenance charges not expended by landlord as allegedly required under the lease. Second, K-Mart claimed damages for landlord's alleged breach of obligation during the past 6 years to make and pay for all repairs to the buildings necessary to maintain them in a safe, dry, and tenantable condition. Specifically, K-Mart claimed that landlord's failure to repair the roofs and parking lots caused a diminution in value of the rental premises, and requested compensation of $725,000 which represented 10 percent of the gross rents paid by K-Mart during the past 6 years. Unlike the minor maintenance, K-Mart chose not to undertake the larger repairs itself. A third theory of damages based on loss of business was not pursued by K-Mart at trial.

With respect to its claim of damages for diminution of rental value, K-Mart sought to introduce the testimony of an expert witness, John C. Blackmore, a real estate appraiser. The qualification of the witness as an expert is not at issue. According to K-Mart, Blackmore was prepared to testify as to the state of disrepair of the five K-Mart stores and how the disrepair affected the leasehold value which K-Mart received over the past 6 years. A motion *in limine* was made by landlord to preclude any such testimony as being speculative, based on future values uncontemplated by the parties and not properly before the court in a request for compensatory damages. After arguments by the parties, the district court stated that Illinois law allowed a tenant to recover damages for breach of an obligation to repair based on the difference in value of the premises in and out of repair. The court, however, held Blackmore's testimony as to the diminution of the leasehold value of the *whole* of the five properties inadmissible:

> The case before this court involved the landlord's alleged breaches of the last six years of the covenant to repair and maintain, which are contained in the leases for the five K Mart stores. This is the case of a *partial* breach of the five-lease agreement. The court underscores partial. Thus, Blackmore's testimony as to the diminution of the leasehold values, assuming that K Mart were to sublease the premises in the future and exercise all of the lease options is inappropriate in the present case. Nor would testimony regarding the diminution of the leasehold values for the last six years be appropriate, since there has been no evidence presented in this case that K Mart subleased or attempted to sublease any of the five properties.

The statement that K-Mart made no sublease is not entirely correct as it did sublease part of the Downers Grove premises. But it is accurate enough to set up the legal issue we must resolve, as apparently that sublease could not have thrown light on overall rental value. Although the district court went on to allow "any evidence or

testimony which could be presented by K-Mart to support a measure of damages for the alleged breach of the covenant not to repair * * *," K-Mart contends that the exclusion of Blackmore's testimony effectively precluded it from pursuing its claim of $725,000 in damages.

At closing argument, K-Mart requested the jury to assess damages "in excess of $205,000" representing "billed" costs of approximately $88,700 and "unbilled" costs of $116,700, that is, costs incurred by K-Mart for parking lot maintenance and lawn maintenance but not represented by invoices. The jury returned a general verdict finding landlord liable to K-Mart for the amount of $205,700, including about $300 not specifically attributable to any particular cost. The parties have not placed this relatively small discrepancy in issue.

Landlord requests this court to reduce the verdict by $116,700, the amount of the "unbilled" costs, on the ground that such costs were not disclosed by K-Mart until closing argument. Landlord also assigns error to the district court's construction of the Downers Grove lease provision concerning the amount of additional rents due landlord from the supermarket expansion. Further, landlord contends that there is no evidence in the record that the failure to paint the exterior of the building was a breach of the covenant to maintain, and requests this court to direct such a determination. K-Mart cross-appeals, contending that the district court erroneously excluded the testimony of its expert witness on diminution of rental value and that such exclusion necessitates this court granting a new trial on the issue of damages. We now address each of these issues.

## Opinion

### A

■ Under Illinois law, a tenant has various remedies available on breach of landlord's covenant to repair. The tenant may (1) abandon the premises if they become untenantable by reason of the breach, (2) remain in possession and recoup damages in an action for rent, (3) make the repairs and deduct the cost from the rent or sue landlord for the cost, or (4) sue landlord for breach of the covenant and recover the damages usually measured by the difference between the rental value of the premises in repair and out of repair. *Book Production Industries, Inc. v. Blue Star Auto Stores,* 33 Ill.App.2d 22, 178 N.E.2d 881, 885 (1961).

Landlord first argues that the remedies available to K-Mart for breach of the covenants to repair and maintain do not include all the alternatives mentioned above, but are limited to those remedies explicitly stated in the lease provisions. Landlord correctly notes that the lease provides that K-Mart may abate its rent for any portion of the buildings rendered unusable due to breach of covenant to maintain the premises and that K-Mart may, after proper notice, make the repairs and charge the expense to landlord or withhold rent payments to cover the expenses. Landlord also correctly states that K-Mart did not elect to pursue these contractual remedies as to all of the alleged breaches in the case.

■ Before a party is deemed to have waived or relinquished a right or remedy available to it under law, a clear and distinct manifestation of such an intent must be found. *See Standard Oil Company v. Daniel Burkhartsmeier Cooperage Co.,* 333 Ill.App. 338, 77 N.E.2d 526, 532 (1948). The mere fact that a contract provides remedies a tenant may pursue on breach of a landlord's covenant does not necessarily limit the remedies available. *See McArdle v. Courson,* 82 Ill.App.3d 123, 37 Ill.Dec. 402, 402 N.E.2d 292, 295 (1980). Here, the lease does not state that remedies provided in the contract are mandatory, nor does it indicate, expressly or impliedly, that those remedies are to be exclusive. The lease clearly states that tenant is under no duty to make repairs that are required to be made by landlord, and it uses the term "may" to indicate that the remedies available to tenant are optional and voluntary. Moreover, a separate lease provision relating to landlord's remedies expressly states that it is exclusive, thereby indicating that where the

parties intended an exclusive remedy, it was expressly so provided in the contract. We therefore reject landlord's argument that the lease provides the exclusive remedies available to tenant and conclude that tenant, in this case, may pursue any remedy available to it under Illinois law.

### B

■ As noted above, Illinois law provides that a tenant may elect to sue its landlord for breach of covenant to repair and recover damages, usually measured by the difference between the rental value of the premises in and out of repair. *Zion Industries, Inc. v. Loy,* 46 Ill.App.3d 902, 5 Ill.Dec. 282, 361 N.E.2d 605; 612 (1977); *Book Production Industries, Inc. v. Blue Star Auto Stores, supra.* This theory of damages is known as diminution of rental value and reflects the sum a tenant is entitled to recover to restore him to the position he would have been in had he received the benefit of his bargain, that is, the benefit of premises in repair. Contrary to landlord's contention, this is not a "novel theory to justify a 10 percent retroactive rent rebate," but is a proper, if not universal, measure of compensatory damages for breach of duty to repair, though of course the 10 percent figure may be excessive and would not bind the jury.

Our next concern is what evidence is admissible to prove a diminution of rental value in this case. Landlord argues that an offer of proof as to estimated repair costs should be required. The district court apparently believed that evidence of loss resulting from a sublease or attempted sublease of the premises was necessary, although it did not cite any authority for this proposition. We do not agree with either contention.

■ Diminution of rental value is, by definition, the difference in value of the property in and out of repair. Obviously, this theory of damages requires proof of the reasonable rental value of the premises had landlord fulfilled its obligation under the lease to keep the premises in repair, and proof of the reasonable rental value of the premises "as is," that is, the reasonable rental value of the premises in disrepair. The question of value is, of course, the proper subject for expert testimony. *See City of Chicago v. Bank of Ravenswood,* 93 Ill.App.3d 52, 48 Ill.Dec. 593, 416 N.E.2d 1115, 1118 (1981); *see generally Rogers on Expert Testimony,* § 296 at 729 (3d ed. 1941); 32 C.J.S. *Evidence* § 546(114) (1964). Neither the district court nor the parties dispute this point. What is disputed here is whether the expert testimony in the case was properly excluded as being too speculative without other evidence of the sublease value of the premises.

■ In excluding the expert testimony, the district court, without citing to any authority, concluded that such testimony was improper as there was no evidence of an actual or attempted sublease of the properties. Apparently, the district court believed that mere testimony of the value of the premises in disrepair was too speculative to aid the jury in assessing damages, and that more "concrete" evidence was required. Testimony as to the value of property which is a mere guess or conjecture is, of course, properly excluded, as such speculation cannot form the basis for a lawful award of damages. *See, e.g., United States v. Griffith, Gornall & Carman, Inc.,* 210 F.2d 11, 13 (10th Cir.1954); *Coronado Oil Co. v. Grieves,* 642 P.2d 423, 436 (Wyo.1982). Where, however, the testimony of a qualified witness as to the value of property has a reasonable factual basis, it should not be so excluded. *Cf. Fontainbleau Hotel Corp. v. Crossman,* 323 F.2d 937, 943 (5th Cir. 1963) (experts testified on diminution of rental value in suit by lessee for damages for breach by landlord of exclusive right to sell certain items in hotel). Of course, the basis of the expert's opinion and the method of assessing value may be inquired into. Fed.R.Evid. 705; *Rogers on Expert Testimony, supra,* § 298 at 733.

The district court did not allow K-Mart's offer of proof regarding the expert's testimony. Thus, we can only surmise from the record before us that the expert was prepared to testify as to the state of disrepair

of the premises and how that state affected the leasehold value which K-Mart received over the past 6 years. The expert's opinion was apparently based on a three-step process: (1) computation of the present (discounted) worth of the leaseholds; (2) determination of the amount of repair and replacement costs which should be spent on similar properties to keep them in a state of repair; and (3) estimation of the damages over the past 6 years. Apparently, this offered testimony was not based on a mere guess or conjecture. Moreover, in the absence of the offer of proof, we cannot assume that the expert was not qualified, that he did not have an opinion, or that he had not ascertained the facts in the manner usual with real estate experts. Therefore, we cannot assume his opinion would have lacked sufficient foundation in fact. We can and do assume it would have been admissible, with the weight to be given it for the jury to decide. Landlord's arguments against the methodology employed by the expert in this case would be more properly directed against the weight to be given the testimony rather than its admissibility.

■ Evidence of the rental value K-Mart would have received had it actually subleased the property in its state of disrepair would be, of course, very desirable to a determination of the reasonable rental value of the premises out of repair. *Compare, City of Chicago v. Bank of Ravenswood,* 416 N.E.2d at 1119 (evidence of price paid for property in a recent sale is important but not conclusive in determining present value). But *cf. Department of Business and Economic Development v. Pioneer Trust and Savings Bank,* 39 Ill.App.3d 8, 349 N.E.2d 467, 471 (1976) (price one might be willing to pay for property is not the true standard of value; the price of property in the market generally is the correct basis for valuation testimony). Furthermore, evidence of the rental value of like properties in a similar state of disrepair would still be welcome. Even in the absence of such evidence, however, rental valuation of the property can still be established by opinion evidence. *See United States v. 429.59*

*Acres of Land,* 612 F.2d 459, 462 (9th Cir. 1980). Although testimony may be assigned more weight if based on actual or attempted subleases of the property, or similar property, an expert's opinion as to value of the property is not to be excluded if it is based on other properly considered facts. *Compare, United States v. 329.73 Acres of Land,* 666 F.2d 281, 283 (5th Cir.1982) (expert testimony admissible even though opinion on value of land not based on available comparable sales). Furthermore, we know of no rule of law or logic requiring a tenant to sublease its property, or even attempt to do so, as a prerequisite to establishing damages for breach of landlord's covenant to repair and maintain the premises. None has been suggested here.

■ Landlord contends that K-Mart should be required to offer proof of estimated cost of repairs. While we express no opinion on whether such evidence would be relevant in this case, we know of no authority, and landlord cites none, *requiring* a tenant to introduce such evidence. The cases cited by landlord involving repair costs as the measure of damages for breach of covenant to maintain are inapposite, as those cases do not involve the diminution theory of damages. In any event, proof of estimated cost of repairs is not a necessary element of expert testimony on diminution of rental value, though it may add weight to an opinion on that subject.

■ We find that the district court erred in excluding this expert testimony on the ground that there was no evidence of an actual sublease or attempted sublease by K-Mart of the properties in question. We also find that exclusion of this testimony on the aforementioned ground was highly prejudicial and constitutes reversible error. It led directly to the unfortunate effort to prove "unbilled costs," which consumed a great amount of time, wasted judicial resources, therefore, and furnished at best but a shaky foundation for the verdict. While we do not pass on the matter, as we need not, we view the evidence as presenting a serious question whether the alleged

costs, so proven, should have been allowed to go to the jury. K-Mart apparently embarked on this method only after being blocked in its effort to prove its damages in a reasonable and proper way.

We therefore vacate the jury award of $205,700, and order a new trial on the issue of damages.

C

Next, landlord contends that the district court erred in construing the Downers Grove lease to dispose of landlord's original claim against K-Mart for additional rents due to the subleased supermarket expansion. Two separate articles of the lease are involved here. Article 4(e) provides that "gross sales" for purposes of rental calculations based upon sales does not include:

All sales of merchandise or services made by any supermarket grocery store, which shall occupy any portion or portions of demised premises, provided that the aggregate area of said portion or portions shall not exceed Twenty Thousand Nine Hundred Ninety Two (20,992) square feet of floor area.

Article 15 provides, in relevant part:

Tenant may, at its own expense, at any time erect or construct additional buildings or structures on any portion of the "common facilities" areas as defined in Article 9 and depicted on Exhibit "B"; provided, however, gross sales made *in or from said additions* shall be included in gross sales as defined in Article 4 of this lease. [Emphasis supplied.]

■ The district court stated that K-Mart's addition to the grocery store obligated it to pay an increased rent, but that only that portion of the gross sales attributable to the *new addition* to the grocery store area should be included in the gross sales figures in Article 4. We agree. Landlord's argument that K-Mart should be required to include in the Article 4 rent calculation *all* the gross sales from operation of the grocery store is inconsistent with the clear and unambiguous language of the lease which provides that tenant is obligated to pay additional rent based upon gross sales *in and from said additions.* The district court's construction of the lease is not erroneous and therefore is affirmed.

D

■ Finally, landlord requests this court to direct a finding that it did not breach its obligation under the lease to paint the exterior of the premises as required to maintain the premises in a safe, dry, and tenantable condition. Landlord does not seek a reduction of damages on this element; rather landlord asks this court to "clarify" his lease obligation for exterior painting in the future. Such a request is in the nature of a declaratory judgment and is not appropriate at this stage. We therefore decline landlord's request for a directed finding and express no opinion on the merits of the request.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.