THE DEPARTMENT OF CONSERVATION, Petitioner-Appellant and Cross-Appellee, *v.* NATHALIE STRASSHEIM, Trustee, *et al.*, Defendants-Appellees and Cross-Appellants.

Second District    No. 80-195

Opinion filed January 14, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Frank M. Daly, Special Assistant Attorney General, and Roy E. Frazier, Assistant Attorney General, of counsel), for appellant.

Donald T. Morrison & Associates, P. C., of Waukegan, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Lake County in a condemnation case, which awarded the defendants $37,500 for the land taken and $5,000 for damage to the remainder. Both sides appeal, the State contending the award is too high and the defendants contending it is too low. A brief statement as to the background of the case and the points developed at the trial will serve to delineate the issues raised on the appeal by both parties.

On August 24, 1978, the Department of Conservation of the State of Illinois filed a petition to condemn the east 13.99 acres of the defendants' property, which consisted of 27.7 acres of unsubdivided land, zoned agricultural. The defendants' property is irregularly sloped and is approximately 2,000 feet north of the point at which State Park Road (which is the north-south dividing line between Lake and McHenry Counties) turns at a right angle and goes east. The land is in close proximity to other land owned by the Department of Conservation and intended for development as part of the Chain O'Lakes State Park Conservation Area. It has a westerly boundary of approximately 747 feet, southerly boundary of approximately 1308 feet, an easterly boundary of 1,044 feet and northerly boundary of 1,057 feet. It is improved with a four-room brick house in the northwest corner of the property. Toward the east, the land slopes downward and the easterly part is swampy and part of it is covered with water. The northeast corner of the property, about 8 acres, is in the flood plain.

After the State had filed its petition to condemn, the defendants filed a cross-petition alleging damage to the remainder and filed a "Notice of

Defendants' Election to Open and Close." The trial court granted the defendants' motion to open and close, and the trial proceeded accordingly.

Before the trial, the defendants also presented to the court certain exhibits—Exhibits 1, 2 and 3—which the defendants asked to be admitted into evidence. Exhibit 1 was an outline of the defendants' property showing the part to be taken and the remainder. Exhibit No. 2 was termed a "Land Division Feasibility Study," purporting to show the feasibility of dividing the property into five parcels or lots of approximately 5 acres each. Exhibit No. 3 was similar to exhibit No. 2; however, it was not offered at trial. These exhibits had been prepared about one month previous to the trial and were obviously prepared for the purpose of influencing the jury's award of damages. This was conceded by defense counsel at oral argument.

Both sides presented witnesses who testified as to the fair cash market value of the property. Charles Moskal, a builder and property manager, testified that in his opinion the highest and best use of the property was for single-family lots. He set the value of the whole tract on the date of the condemnation petition at $225,000 with the value of the part taken being $70,000 and the value of the remainder being $130,000 and damage to the remainder after the taking being $25,000.

Witness Harrison testified that the highest and best use of the property was for single-family residential purposes and he valued it before the taking at $255,000, with $64,500 as the value of the part taken, $190,500 as the value of the remainder and $25,000 as the damage to the remainder. He said the property could be divided only into two parcels after the taking whereas five lots would have been possible before the taking.

Paul Marchesi testified that the eastern portion of the property was a bog area and part of it was waist high in water at the time he visited the property.

The Department of Conservation called the deputy director of the Lake County Building and Zoning Department for the purpose of giving his opinion on the feasibility of using the property as depicted in the · defendants' land division feasibility study. (Exhibit No. 2.) His testimony was objected to by defense counsel and the objection sustained as to his opinion that such development was not feasible under the Lake County Subdivision Control Ordinance. The basis of sustaining the objection was that the exhibit was not intended to show compliance with the Lake County Subdivision Control Ordinance, and it was not intended to be a plat of subdivision.

Mr. James Weber testified as a landscape architect for the Department of Conservation that the purpose of acquiring the land in question

was to use it as a State nature preserve, in line with the State's master plan for development of the Chain O'Lakes State Park.

Louis Pomerantz, called as a witness for the Department, testified he lived about 2½ miles from State Park Road and that he had bought his 17.85-acre parcel in October 1978 with a brick and frame house on it with all land being usable for $185,000.

Francis Hardy, employed by the State as a nature areas' biologist, testified regarding plant life and the presence of endangered species of plants on the condemned portion of the property.

A real estate appraiser and licensed broker, Thomas Peters, testified for the State that in his opinion the fair cash market value of the whole property at the time of taking was $175,000, the value of the acquired property as part of the whole was $15,400, the value of the remainder as part of the whole was $159,600 and there was no damage to the remainder. He also gave his opinion that it was not economically feasible to divide the property into five building sites, as depicted in the defendants' land division feasibility study.

Howard Katzenberg, another valuation witness for the State, testified that in his opinion the highest and best use of the land was for single-family residential purposes and gave a valuation of $155,000 for the property before the condemnation, a value of $16,800 ($1,200 per acre) for the part taken, a value of $138,212 for the remainder as part of the whole, and he also was of the opinion that there was no damage to the remainder by the taking. He also was of the opinion that it was not feasible to divide the land into five lots previous to the taking. He also testified to certain comparable sales in the area. In the course of cross-examination, Katzenberg was impeached by defense counsel. Katzenberg was asked whether he had ever made any written appraisals for banks in the area, and he answered "yes." At that point defense counsel introduced a prior deposition at which, when asked the question whether he had ever made any written appraisals for banks, Katzenberg had answered "no." This was the basis for an instruction (Illinois Pattern Jury Instructions, Civil, No. 3.01 (2d ed. 1971) (hereinafter IPI Civil)) on the credibility of a witness who makes a prior statement inconsistent with his in-court testimony. Defense counsel made use of this instruction in impeaching the credibility of the witness Katzenberg in his closing argument. Katzenberg was also asked whether, in making his appraisal of the value of the property as a whole, he had, as one of the factors he relied on in making his judgment, considered the fact that the property was surrounded on the north, south and west by Department of Conservation land. The answer was that that was one of the factors considered but the witness said that the fact of ownership did not affect his opinion of value but rather the nature of the property was the basis of his opinion, it being "practically

nothing but a wildlife area." This was the basis for an objection to Katzenberg's opinion of value since it was claimed that his testimony violated section 9.7 of "An Act to provide for the exercise of the right of eminent domain" (Ill. Rev. Stat. 1977, ch. 47, par. 9.7), which reads as follows:

"'Except as to property designated as possessing a special use, the fair cash market value of property in a proceeding in eminent domain shall be the amount of money which a purchaser, willing but not obligated to buy the property, would pay to an owner willing but not obliged to sell in a voluntary sale, which such amount of money shall be determined and ascertained as of the date of filing the petition to condemn. Provided, that in the condemnation of property for a public improvement there shall be excluded from such amount of money any appreciation in value proximately caused by such improvement, and any depreciation in value proximately caused by such improvement. Provided further, that such appreciation or depreciation shall not be excluded where property is condemned for a separate project conceived independently of and subsequent to the original project."

In this appeal the State contends that the trial court erred (1) in admitting the defendants' exhibit No. 2, the land use feasibility study previously referred to; (2) in allowing the defendants' motion to open and close at each stage of the trial; (3) in allowing impeachment of the witness Katzenberg and the giving of IPI Civil No. 3.01 and (4) that the defendants' closing argument was so improper and inflammatory as to constitute grounds for a new trial.

In the cross-appeal, the defendants designate as error by the trial court the failure to strike the valuation testimony of Katzenberg because of a violation of section 9.7 of "An Act to provide for the exercise of the right of eminent domain", the admission of Katzenberg's testimony as to certain comparable sales and the testimony of the witness Hardy who commented on the purpose of the taking and the nature of the land from the Department of Conservation's standpoint.

We are not inclined to reverse the trial court's decision on any of the points raised in the cross-appeal. As to the contention that Katzenberg's opinion as to value was vitiated by his reference to the use of the adjoining property as a wildlife conservation area in contravention of section 9.7 of the Eminent Domain Act, we do not think the testimony came within the intent of that statute. We note that the section of the act relied upon speaks of "appreciation" or "depreciation in value * * * caused by such improvement." In the case before us the testimony did not indicate that any activity or improvement of the land in the immediate vicinity changed the witness' opinion as to value—it was merely indicated by the

witness that the nature of the property was a wildlife refuge and that the land was unsuitable for other uses than the use contemplated by the Department of Conservation. The witness said it was less valuable under these circumstances than if it had been adjacent to a beautiful building lot. Moreover, it was not established that ownership and use of the surrounding property by the Department of Conservation was a recent change in the use and condition of the land caused by the activities of the Department or related to an ongoing use connected with the same project. The extent to which the present acquisition was related to past activities in connection with the Chain O'Lakes State Park was not established. Thus the testimony did not come clearly within the rules of exclusion. (See *Forest Preserve District v. Valente* (1978), 61 Ill. App. 3d 887.) We think, as did the trial judge, that it was not at all clear in the situation at hand that the opinion of the witness was due to any "improvement" or change of the land brought about by the Department's acquisition of it. As the witness testified, it was not suitable for anything except a wildlife preserve and no change or "improvement" was indicated to have occurred at all.

■ As to the testimony of the witness Hardy regarding the purposes of the condemnation, we think it was proper for the Department of Conservation to show the reason for the taking and the use to which the land would be put. Since the use indicated would in no way change the character of the land—its purpose being to *preserve* rather than to change—there obviously was justification for evidence by the Department tending to establish that no change was contemplated in the use and function of the land taken which would tend to depreciate the remainder.

■■ As to the objection that certain comparable sales should not have been admitted, we note that the trial court has considerable discretion in this regard and there must be a clear abuse of such discretion to merit a reversal on this point. Our supreme court said in *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 522, that there is no general rule which governs the degree of similarity between the properties in question, "rather, the admissibility of such evidence must in each instance be determined by the trial judge within the proper limits of his discretion." This court, moreover, has recognized that "similar" does not mean "identical" but means having a resemblance and that "property may be similar for purposes of fruitful comparison, though each possesses various points of difference." (See *Department of Transportation v. Prombo* (1978), 63 Ill. App. 3d 407; *Lake County Forest Preserve District v. Frecska* (1980), 85 Ill. App. 3d 610.) While the properties involved in the sales in question were certainly not identical, they were not so dissimilar as to make their admission an abuse of discretion, and we see no

indication that the jury was misled into giving a verdict clearly against the manifest weight of the evidence.

As to the direct appeal, we think the trial court did not abuse its discretion in allowing the defendants to open and close at the trial. In *Department of Business & Economic Development v. Brummel* (1972), 52 Ill. 2d 538, 543, our supreme court said:

> "Our Rule 233 provides: 'The parties shall proceed at all stages of the trial including the interrogation of prospective jurors, opening and closing statements, the offering of evidence, and the examination of witnesses, in the order in which they appear in the pleading unless otherwise agreed by all the parties or *ordered by the court* * * *.' (Emphasis added.)
>
> We think the provisions of this rule present a workable solution to the problem of who proceeds first in the condemnation case. If the landowner filed a cross-petition for damages to property not taken and desires to proceed first at all stages of the trial he may file a timely motion to this effect prior to trial. Under the authority of our Rule 233 the court in the exercise of sound judicial discretion may order him to so proceed."

■■ In this case, since the defendants filed a cross-petition and made timely application to proceed first, we think it was within the trial court's discretion to allow the defendants to do so. We find no reversible error in that ruling.

■■ As to the impeachment of the witness Katzenberg, we think it was a rather close question, but we cannot say the decision was not within the trial court's discretion. While Katzenberg's main function was to testify as to the value of the property, his qualifications as an expert were tied in with his experience and a false answer as to that experience was relevant to his credibility as to value. We are therefore not inclined to regard as reversible error the giving of IPI Civil No. 3.01, which allowed defense counsel to comment freely on the witness' credibility.

■■ The issue of defense counsel's closing argument is more serious. It was clearly improper in its characterization of the attitude of the Department as amounting to "tyranny," his reference to Katzenberg's testimony as "an insult" and his exhortation to the jury to "send out a message loud and clear to the Department of Conservation that the people of this community simply will not stand for that kind of behavior." These comments, we think, exceeded the bounds of propriety, since they are an appeal to the jury to decide the case in a punitive manner and not on the law and the evidence. However, we do not, in this case, reverse on that issue.

This brings us to the last point of appeal. The Department contends it

was prejudicial error for the trial judge to allow into evidence exhibit No. 2, the drawings or sketches prepared for the defendants at defense counsel's suggestion and entitled "Land Division Feasibility Study." These drawings were admittedly prepared for trial about one month prior to trial and about one year after the condemnation petition was filed. The "study" was conceived by defense counsel, who brought it to a land surveyor to make the actual drawings. These drawings were not presented as being an actual plat of subdivision and could not have been filed or recorded as such. As the court observed, "that's not a plat that is a drawing." Defense counsel did not disagree with this remark. While the drawing indicated a division of the land into five-acre lots, there was no evidence that any tract of land in that area had been so divided and no evidence of any demand for lots of five acres in that area. It was not claimed that the drawing represented a use which the defendants had contemplated—at oral argument it was conceded that defense counsel had conceived the drawing in question not long before trial and for the purpose of enhancing damages.

■■ As noted above, the defendants objected to the testimony of Paul Sochen, deputy director of the Lake County Building and Zoning Department. Sochen was asked to give his opinion as to the feasibility of developing the property in question along the lines suggested in the Land Division Feasibility Study presented at trial. Sochen answered that the drawing was not feasible on the basis of existing zoning and plat regulations. However, this answer was objected to by defense counsel, and the objection was sustained by the trial ccurt on the ground that the defendants were not presenting a plat of subdivision and therefore objections to the possibility of actually implementing the study by dividing the land into five-acre lots and putting residences on them because of plat requirements and zoning regulations were not germane, since it was not contended that this was an actual plat of subdivision. The trial court, in the course of the witness' testimony, observed:

> "This is not a plat of subdivision. It is not intended to be a recordable plat. It is simply an exhibit which was prepared for the—prepared by the defendant as a feasibility plat and to show the adaptability of this land for that use. It may never be used for that; but I think for the purpose of showing its adaptability to that use, it is an admissible exhibit. I think now for this witness [Sochen] to be prepared to testify that nobody could build homes on it would completely destroy the evidentiary value of the plat, and it was admitted for a limited purpose."

After some further argument, the following occurred:

> "THE COURT: Right, and clearly this document is not going to the jury for the purpose of saying that the Strassheims ever intend

to be subdivided in this direction or that this is a recordable plat. It is simply to show the adaptability of that land to that use.

MR. MORRISON: That's right, if they will be so instructed to exclude the testimony that no building permits can be issued on that.

THE COURT: You may step down, Mr. Sochen."

It will be noted that the drawings in question are not designated "Land Development" study but merely "Land Division Study." The drawings showed a *division* but not necessarily a development.

It is clear from the foregoing that the "Feasibility Study" had no practical purpose so far as a division of the land was concerned. It did not represent a plan for actually developing the land. While it was entirely possible to divide the land as shown in the study and produce five lots of five acres or more (before the taking) and these, as the trial court pointed out, could have been legally conveyed to third parties by the defendant, this was entirely theoretical. It had no bearing on the actual use of the land as residential lots. The defendants had no plan of implementing the project because of the practical difficulties inherent under zoning and subdivision control ordinances, which, due to the situation of land, without access roads, and the run-off and erosion possibilities of its slope, made actual use of the land along the lines indicated in the feasibility study impractical.

The cases on this point are limited, but in several cases our supreme court has upheld the exclusion of drawings or plans not intended as a plat and not recorded but merely presented as a possibility for the future. In *Forest Preserve District v. Wallace* (1921), 299 Ill. 476, 485, our supreme court said:

> "Appellant also complains of the court's action in refusing to admit in evidence a plat by Vernon T. Wallace of a proposed subdivision of appellant's property. As has already been disclosed that plat was not of record, and the land was not surveyed into lots according to that plat, and there is no certainty that it will be or become an actual plat of that land. It is not even shown that a plat was contemplated or made before suit was brought. The court did not err in excluding this plat. A very similar ruling was sustained by this court in *Sexton v. Union Stock Yard Co.* 200 Ill. 244."

See also *Martin v. Chicago & Milwaukee Electric R.R. Co.* (1906), 220 Ill. 97, and *Department of Public Works & Buildings v. Lambert* (1952), 411 Ill. 183, 192, where the court commented on the purpose of the exhibit, saying:

> "Appellants rely on the case of *Chicago and Evanston Railroad Co. v. Blake*, 116 Ill. 163. As stated in that case, the question of whether evidence of this kind is proper depends entirely upon the

purpose for which it is offered and to which it is limited by the court. If it is offered merely as an illustration of one of the uses to which the property is adapted and it is clearly and expressly limited by the court to such object it will not be prejudicial error to admit it, but, if the object is to enhance the damages by showing such a structure would be a profitable investment, it is clearly incompetent. We held in that case that it was not prejudicial error to admit plans for a certain structure which the landowner had, for a number of years past, contemplated erecting on the premises. We there further stated, however, that the practice of introducing such evidence should not be encouraged, as there is generally more or less danger of its being misunderstood by the jury."

The most recent pronouncement on this point was by this court in *Forest Preserve District v. Vernon Hills Development Corp.* (1980), 85 Ill. App. 3d 241, where we affirmed the trial court's exclusion of drawings of a proposed development. In *Department of Conservation v. First National Bank* (1976), 36 Ill. App. 3d 495, we upheld the trial court's refusal to admit a proposed plat of subdivision. This court in paraphrasing the *Wallace* opinion pointed out that the plat in question was not of record, the land had not been surveyed into one-acre lots, there was no evidence that it would be surveyed or become an official plat and that the evidence indicated that the plat was not contemplated before suit was brought. The court therefore held the plat should be rejected.

In the case before us, likewise, the land had not been surveyed into lots, there was no plat of record, there was no evidence of an intent to have it surveyed or make it an official plat and the plan or "Study" was clearly devised for trial purposes and it was not contemplated before the suit arose. Moreover, bearing in mind the situation of the *Lambert* case, the purpose of the exhibit was admittedly to enhance the possible damages by showing that a more profitable use might be made of the property if it remained intact. As was said long ago in *Sexton v. Union Stock Yard & Transit Co.* (1902), 200 Ill. 244, 248:

"In *Chicago and Evanston Railroad Co. v. Blake*, 116 Ill. 163, we held that the plans of a structure which the owner of land sought to be condemned had contemplated, for a number of years, erecting on the premises, might be received in evidence as an illustration of one of the uses to which the property was adapted, if its introduction was expressly limited by the court to that object, but that such testimony was inadmissible to enhance the damages. We also there said that the practice of introducing such evidence should not be encouraged, as it was more likely to mislead than to enlighten the jury."

In the case before us, also, we think that the exhibit in question was of a nature to confuse the jury, since the jury would naturally conclude that it had probative value as to damages or it would not have been admitted for their consideration. Actually it had no probative value as to damages because it was not based on reality. It is our opinion, therefore, that defendants' exhibit No. 2 should have been excluded by the trial court as having a tendency to mislead the jury.

The judgment of the circuit court of Lake County is reversed and remanded for a new trial with instructions to exclude the defendants' exhibit designated "Land Division Feasibility Study."

Reversed and remanded with directions.

LINDBERG and VAN DEUSEN, JJ., concur.