OAK BROOK PARK DISTRICT, Plaintiff-Appellant, v. OAK BROOK DE-VELOPMENT COMPANY *et al.*, Defendants-Appellees.

Second District No. 2—87—0190

Opinion filed May 5, 1988.—Rehearing denied June 29, 1988.

Frank S. Righeimer and Elizabeth E. McGrail, both of Righeimer, Martin, Bridewell & Cinquino, P.C., of Chicago (Stephen D. Helm and Leo N. Cinquino, of counsel), for appellant.

Stephen D. Helm, of Naperville (Frank S. Righeimer, Jr., Leo N. Cinquino and Sandra L. Hebenstreit, of counsel), for appellant.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Oak Brook Park District (Park District), appeals from the judgment of the circuit court of Du Page County, entered upon a jury verdict, finding the amount of just compensation due defendants (owners) for the taking of a 32.7-acre tract of land to be $17,063,196 and damages to the remaining .8 acre not taken to be $278,752. The Park District's motion for a new trial was denied by the trial court.

The issue at trial was the value of the subject property on April 9, 1984, taken by the Oak Brook Park District from the defendants under the Park District's power of eminent domain and the amount of damages, if any, to the remaining .8 acre of land which was part of a 33.5-acre tract of which the Park District condemned 32.7 acres. The plaintiff presented three experts who testified as to the value of the subject property and any damages to the remainder. Defendants presented one expert on the issue of value of the subject property and damages to the remainder. Plaintiff argued that the highest and best use of the subject property was residential, and, as such, its value was $1,700,000. Plaintiff also argued that since the highest and best use of the property was residential, the remainder, as residential, was only damaged between $0 and $19,200.

Defendants argued that, although the property had been zoned residential since 1978, there was a reasonable probability of rezoning

the subject property to a commercial use, and the highest and best use of the property was a commercial use, and the value of the subject property under this highest and best use was approximately $17 million. Defendants argued that the remainder, like the subject property, had a highest and best use as commercial property. Since the taking would isolate the remainder and prevent it from being sold as part of the 32.7 acres taken and since the remaining .8 acre was not very marketable as commercial property, separate from the 32.7 acres to which it was attached, defendants argued the remainder was damaged in the amount of $278,752. This figure was based on defendants' expert's opinion that the value of the whole contiguous tract was approximately $520,000 per acre.

Plaintiff, in addition to disputing defendants' theory of highest and best use, argued there was no reasonable probability of rezoning to permit defendants' claimed highest and best use. The jury returned a verdict in favor of defendants, adopting the identical value of the subject property as testified to by defendants' expert appraisal witness. In addition, the jury also found the remainder to have been damaged in the exact amount to which defendants' expert appraisal witness testified.

On appeal, plaintiff raises numerous issues. Plaintiff claims the trial court erred in the following regards: (1) in its rulings concerning numerous evidentiary issues on the admissibility of certain evidence relevant to value and the issue of the reasonable probability of rezoning; (2) in its instructions to the jury; (3) in overruling plaintiff's objection to defendants' final argument; and (4) that the verdict was a result of passion and prejudice caused by defendants' improper final argument.

A detailed description of the subject property and surrounding area is not necessary to our disposition of this appeal. However, a history of the actions and relations surrounding the subject property is required to understand plaintiff's arguments. The subject property is located at the northeast corner of Route 83 and 31st Street in Oak Brook. The subject property consists of 33.5 acres of unimproved land of which 32.7 acres was taken by plaintiff under its power of eminent domain. The valuation date at trial was April 9, 1984. At that time defendants were the owners of the subject property. The interest of defendants in the subject property arose by way of the actions of Paul Butler and through the will of Paul Butler, upon his death.

Plaintiff sought to introduce evidence of the actions of Paul Butler and the Village of Oak Brook board of trustees concerning the subject property in 1978. Plaintiff argues on appeal that this evidence

was offered on the issue of the reasonable probability of rezoning. The disputed evidence concerned several facts and circumstances. In 1977, Paul Butler's Company (Butler Company) sought the Village of Oak Brook's approval for a proposed shopping center development on the property. At that time the property was zoned B-1, which would allow a shopping center or offices. At the same time the Butler Company also owned a 75-acre parcel which contained the company's general headquarters and was referred to at trial as the GHQ property. The subject property was bounded to the east by Jorie Boulevard. Directly to the northeast of the subject property across Jorie Boulevard was the GHQ property. In 1977, the Butler Company sought to have the GHQ property, which was mainly zoned residential, rezoned to allow a commercial use (ORA-3). The Butler Company wanted to sell the GHQ property to the McDonald's Corporation, which desired to build a combined office complex and training, research and hotel project.

On January 12, 1978, the Village of Oak Brook rejected the application of the Butler Company and McDonald's to rezone the GHQ property from residential (R-1) to commercial (ORA-3). Sometime in late January or early February 1978, the Village of Oak Brook rescinded its rejection of the GHQ rezoning. On April 17, 1978, Paul Butler caused a declaration of covenants and restrictions to be executed which purported to restrict the subject property to residential uses only. On May 4, 1978, the "Village Comprehensive Plan" was amended by the board of trustees to show the subject property zoned residential (R-3), and the GHQ property zoned as commercial (ORA-3), which permitted the McDonald's development presently in existence. On May 31, 1978, the board of trustees of the Village of Oak Brook passed the relevant ordinances effectuating the rezoning of the subject property from commercial to residential (B-11 to R-3) and the GHQ property from residential to commercial (R-1 to ORA-3) as reflected in the Village's comprehensive plan of May 4, 1978. On September 8, 1983, after the death of Paul Butler, a document purporting to be a release of the covenants and restrictions was filed by the children of Paul Butler who were the beneficial owners of the subject property at the time the release was filed.

## I. EVIDENTIARY RULINGS

### 1978 COVENANTS AND RESTRICTIONS

First, we address plaintiff's contentions directed at the trial court's rulings on several motions *in limine* filed by defendants concerning the 1978 covenants and restrictions and their purported re-

lease, as well as certain zoning ordinances of the Village of Oak Brook. Defendants filed a motion *in limine* to exclude from evidence at trial the covenant and restrictions and the release on the grounds that they were not relevant to or probative of the issue of the value of the subject property on April 9, 1984. Defendants' motion also sought to exclude any extrinsic evidence as to the intent of the parties who executed these documents. The covenant and restrictions had been executed by Paul Butler as president of the Butler Company as well as Chicago Title & Trust Company as trustee under a trust of which Paul Butler was the beneficiary. The release had been executed by his children, and the Butler Company by Jorie Ford Butler. The trial court, after extensive argument, denied the motion as to the documents but granted the motion in part as to the intentions of the parties who executed the documents. The trial court did not state its reasons for the ruling but did state that plaintiff may argue the intentions of the parties at trial from surrounding facts and circumstances but no direct or indirect evidence as to the intent of the parties who executed the documents would be allowed.

Plaintiff argues on appeal that the trial court's ruling was error and prejudiced its case. Plaintiff argues that this ruling prevented any proof as to the binding effect of the covenants upon Paul Butler and his successors and any proof of reliance by the Village of Oak Brook upon these covenants in their actions rezoning the subject property in 1978. Plaintiff argues this ruling barred proof of the surrounding facts and circumstances which existed in 1978. The record, however, does not support plaintiff's characterization of the trial court's ruling.

The trial court's ruling concerned defendant's motion *in limine* to exclude the covenants and restrictions as not relevant to the issue of value. Plaintiff succeeded in convincing the trial· court that these documents were relevant and that ruling is not before us on review. However, the trial court did exclude extrinsic evidence of the intent of the parties who executed these documents. The documents at issue were clear and unambiguous. Plaintiff, while arguing the relevance of the documents, stated: "The face of the documents say [*sic*] who the restrictive covenant runs to and the intention of the parties is absolutely crystal clear. It can't be denied from the face of it." The trial court properly excluded extrinsic evidence as to the intent of the parties who executed the documents, since the documents were clear and unambiguous. Where a contract is clear and unambiguous, the parties' intent is to be drawn only from the words used. *Scheduling Corp. of America v. Massello* (1983), 119 Ill. App. 3d 355, 456 N.E.2d 298.

BOARD MINUTES

Plaintiff contends the trial court erred in granting defendants' motion *in limine* No. 1 which sought to bar the admission into evidence or testimony about all minutes of any public body in Oak Brook relating to any zoning action or comprehensive plan because such minutes collaterally attack duly enacted ordinances and/or reflect the motives and reasons behind the vote of individual board members. Individual member's motives in enacting an ordinance, defendants argued, are not competent evidence as to the motives of the board as a body. The motion further argued that since the individual board members could not testify regarding their motives or reasons for enacting the zoning classification, plaintiff could not indirectly place before the jury such matters. Plaintiff contends that the trial court's ruling prevented: (1) proof that the GHQ rezoning from residential to commercial was done only with the assurance that the instant property would remain residential; and (2) proof that the GHQ rezoning did not affect growth patterns since the instant property was rezoned from commercial to residential at approximately the same time, thus, showing the actual nonresidential use in the area was increased only slightly in 1978. Plaintiff argues that such evidence is admissible on the issue of the probability of rezoning the subject property on April 9, 1984.

■ The minutes at issue were the transcription of one trustee's opinion as to why the board of trustees should vote to approve the GHQ rezoning in 1978. A zoning ordinance is a legislative act and courts lack the power to inquire into the wisdom of the ordinance or motives which prompted its enactment, with the exception that municipal ordinances may be impeached for fraud by persons injuriously affected thereby. (*Anthony v. City of Kewanee* (1967), 79 Ill. App. 2d 243, 223 N.E.2d 738.) Courts should look first to statutory language as the best indication of intent of the drafters, and where the statutory language is unambiguous, the court must enforce the law as enacted without considering other aids. (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 485 N.E.2d 1076.) Further, when a statute enumerates certain things, that enumeration implies the exclusion of all other things. *Roth v. Department of Public Aid* (1982), 109 Ill. App. 3d 457, 440 N.E.2d 910.

■ A reading of ordinance No. S—408 of the Village of Oak Brook, which rezoned the GHQ property to permit the McDonald's development, establishes that the trial court did not err in its ruling. The ordinance was admitted at trial. The ordinance specifically mentions and incorporates the fact that the rezoning application was filed by McDonald's Corporation and the Butler Company. Further, section

2 sets out specific "statements and findings of fact" adopted by the president and board of trustees concerning the rezoning accomplished by ordinance No. S—408. This section specifically refers to the reasons and motives of the board of trustees in enacting the ordinance. There is no indication whatsoever within the language of this ordinance which in any way shows the board of trustees based its decision on the covenants and restrictions which Paul Butler caused to be executed six weeks prior to enactment of the ordinance. In light of the clear and unambiguous language of the ordinance as well as the fact that the ordinance specifically states the board of trustees' findings as well as its motives, it was not error for the trial court to exclude extrinsic evidence consisting of the minutes of the meeting of the board of trustees when debating passage of the ordinance. *Village of North Riverside v. Brookfield-North Riverside Water Comm'n* (1973), 15 Ill. App. 3d 752, 305 N.E.2d 221 (existence of ambiguity in ordinance is a question of law for the court).

EXPERT TESTIMONY: PROBABILITY OF REZONING

██ █ Plaintiff's next contention on appeal is that the trial court erred in allowing the defendants to present evidence on the issue of a reasonable probability of rezoning to the jury. The trial court held an *in camera* hearing to determine whether defendants had presented sufficient evidence to allow their expert to testify to an opinion as to the reasonable probability of rezoning. The trial court ruled in favor of defendants, finding that defendants had made a sufficient showing to admit evidence of a reasonable probability of rezoning before the jury for its consideration on the issue of the value of the subject property. At the *in camera* hearing, plaintiff introduced no witnesses or evidence in rebuttal. Plaintiff's counsel simply stated that he "disagreed" with defendants. On appeal, plaintiff argues that the evidence was insufficient and argues that the evidence, especially the evidence excluded by the trial court, shows there was no probability of rezoning. Plaintiff also argues on appeal that defendants are estopped from arguing the issue of rezoning in light of the restrictive covenants executed by their father. Plaintiff has failed to preserve this issue for review by failing to specify at the hearing the grounds upon which he "disagreed" with the trial court's ruling. (*Psye v. Byrd* (1983), 115 Ill. App. 3d 1003, 450 N.E.2d 1374.) In addition, the record of the proceedings at the *in camera* hearing showed the trial court did not err in its decision. (*Lombard Park District v. Chicago Title & Trust Co.* (1968), 103 Ill. App. 2d 1, 242 N.E.2d 440 (it is for the trial court to make the preliminary determination, as a matter of

law, that there is sufficient evidence of a reasonable probability of rezoning to permit testimony as to market value based on such a probability).) In the instant case, defendants' expert valuation witness testified to the rezoning of nearby property, growth patterns, change in use patterns and the character of the neighborhood, demand, comparable sales, as well as the characteristics of the subject property and the age of the current zoning ordinance. All of these factors are relevant to the issue of a reasonable probability of rezoning. (*Lombard Park District*, 103 Ill. App. 2d 1, 242 N.E.2d 440.) Defendants' expert's opinion was supported by admissible evidence which formed the basis of his opinion. The trial court did not commit error in allowing admission of evidence before the jury on the issue of reasonable probability of rezoning.

Plaintiff also contends the trial court erred in granting defendants' motion *in limine* No. 4. Defendants' motion *in limine* No. 4 was similar to their motion *in limine* No. 1. Defendants sought to exclude testimony by plaintiff's experts concerning their review of the minutes and their opinions about the actions of the Village of Oak Brook board of trustees in granting the rezoning of the GHQ property to allow the McDonald's development and the experts' opinions as to the GHQ rezoning's effect on the probability of rezoning the subject property. The trial court considered this motion to be identical to defendants' motion *in limine* No. 1 and granted the motion. As discussed relative to defendants' motion *in limine* No. 1, extrinsic evidence as to the motives and intent of the board of trustees concerning the 1978 rezoning (ordinance No. S—408) was inadmissible. The trial court did not err in barring such testimony by plaintiff's experts.

■ Additionally, plaintiff's argument at trial was directed at the relevance of its experts' testimony on the issue of a reasonable probability of rezoning. However, evidence must be more than relevant; it must be competent for the purposes offered before a jury will be allowed to hear the evidence. (*Lombard Park District v. Chicago Title & Trust Co.* (1968), 103 Ill. App. 2d 1, 242 N.E.2d 440.) Plaintiff's authority does not support the conclusion that its experts' testimony was competent. (See *Lombard Park District v. Chicago Title & Trust Co.* (1968), 103 Ill. App. 2d 1, 242 N.E. 2d 440; *Department of Public Works & Buildings v. Rogers* (1968), 39 Ill. 2d 109, 233 N.E.2d 409; *Department of Public Works & Buildings v. Association of Franciscan Fathers* (1976), 44 Ill. App. 3d 49, 360 N.E.2d 70.) Plaintiff's expert testimony, which was excluded at trial, could be reasonably characterized as an opinion as to what the current Village of Oak Brook board of trustees might do on a particular application for rezoning by

defendants. In *Lombard,* we discussed the type of admissible evidence on the issue of reasonable probability of rezoning, and the expert testimony plaintiff sought to introduce is not the type of evidence we held to be admissible. (103 Ill. App. 2d 1, 242 N.E.2d 440.) In *Lombard,* we stated:

> "Without purporting to set forth all of such factors, some of the significant factors may be the rezoning of nearby property, growth patterns, change of use patterns and character of neighborhood, demand within the area for certain types of land use, sales of related or similar properties at prices reflecting anticipated rezoning, physical characteristics of the subject and of nearby properties and, under proper circumstances, the age of the zoning ordinance." (103 Ill. App. 2d at 8, 242 N.E.2d at 444.)

Just prior to this statement, we discussed our holding in *Department of Public Works & Buildings v. Rogers* (1966), 78 Ill. App. 2d 141, 223 N.E.2d 177, *aff'd on other grounds* (1968), 39 Ill. 2d 109, 233 N.E.2d 409, that it was not error to exclude expert opinion testimony as to what a particular legislative body is going to do in a particular rezoning matter. (*Lombard Park District,* 103 Ill. App. 2d at 7-8, 242 N.E.2d at 443-44.) In *Rogers,* the expert at issue was a lawyer who had been involved with the drafting of the zoning ordinance at issue in the case. This lawyer was familiar with the subject property and all zoning amendments and variances in the area surrounding the subject property. In *Rogers,* we commented that prognostication on legislative policy should not be encouraged and held the trial court did not abuse its discretion in refusing to allow the expert to testify as to the probability of rezoning the particular subject property at issue for use as a gas station. (*Rogers,* 78 Ill. App. 2d 141, 223 N.E.2d 177.) The rationale of our holding in *Rogers* was that testimony on the reasonable probability of rezoning is admitted as it relates to the "flexibility" of a zoning ordinance and not to show what a particular legislative body might do on a particular application for rezoning. (*Rogers,* 78 Ill. App. 2d 141, 223 N.E.2d 177; *Department of Conservation v. Aspegren Financial Corp.* (1978), 72 Ill. 2d 302, 381 N.E.2d 231; see *Morton Grove Park District v. American National Bank & Trust Co.* (1976), 39 Ill. App. 3d 426, 350 N.E.2d 149 (the Appellate Court for the First District declined to extend the rationale of *Rogers* to allow introduction of evidence on the issue of comparable rezoning of similar property finding such evidence to be of speculative probative value on the ultimate issue of fair cash market value).) For the foregoing reasons, we conclude that the trial court did not err in barring plaintiff's ex-

perts from testifying as to their review of minutes from a 1978 Village of Oak Brook board of trustees' meeting and their opinions based on these minutes, as to what a different Village of Oak Brook board of trustees might do in 1984 concerning a rezoning of the subject property. (*Rogers*, 78 Ill. App. 2d 141, 223 N.E.2d 177.) The trial court's ruling did not prevent plaintiff from introducing other competent evidence concerning relevant zoning factors as they existed in 1978 and arguing that those factors would suggest no reasonable probability of a rezoning in April 1984.

DEPOSITION OF PAUL BUTLER

Defendants' motion *in limine* No. 5 sought exclusion of a 1979 deposition of Paul Butler, taken in an unrelated case, involving different parties. Paul Butler was deceased at the time of trial. Defendant argued that Paul Butler's deposition testimony was inadmissible because it failed to meet the requirements for admission of prior testimony of an unavailable witness. (See *George v. Moorhead* (1948), 399 Ill. 497, 78 N.E.2d 216.) Defendants also argued that statements by Paul Butler, as to value of the subject property made almost six years before the valuation date at issue and predicated on a question which assumed a residential use as the highest and best use, were not relevant. Plaintiff argued that Paul Butler's statements, that the subject property assuming it had a highest and best use as residential would be worth $40,000 to $60,000 per acre, were relevant and admissible as admissions against interest. Plaintiff also argues on appeal that the trial court, by granting defendants' motion *in limine* No. 5, erroneously excluded statements of Paul Butler, concerning his intent in executing the restrictive covenants. Plaintiff did not argue these grounds in the trial court and, therefore, has waived these arguments on review. (*Psye v. Byrd* (1983), 115 Ill. App. 3d 1003, 450 N.E.2d 1374.) In addition, we have previously held herein that the trial court properly excluded extrinsic evidence as to the intent of Paul Butler in executing the covenants and restrictions.

■ ■ However, we will address the issue of whether Paul Butler's statements, made in 1979 concerning the value of the subject property, should have been admitted into evidence. The trial court did not state the grounds upon which Paul Butler's statements were excluded. It appears from the record that the trial court accepted defendants' arguments and rejected plaintiff's. We hold that the trial court erred in granting defendants' motion *in limine* No. 5 as to Paul Butler's statements concerning the value of the subject property in 1979. The statements were relevant and competent evidence on the

issue of the value of the subject property under a residential use as of the valuation date of April 9, 1984. In general, admissions as to the value of property, made by the owner, are competent evidence against him, if sufficiently near the time of the taking to be of service to the jury. (*Department of Public Works & Buildings v. Exchange National Bank* (1975), 31 Ill. App. 3d 88, 334 N.E.2d 810.) Such admissions are admissible as admissions against interest. (*Lake County Forest Preserve District v. O'Malley* (1981), 96 Ill. App. 3d 1084, 421 N.E.2d 980.) Admissions against interest, appearing in a deposition or testimony, even those made in a separate action, are admissible not only against the declarant but against assignees or others claiming under right of the declarant. (*Carlyle v. Jaskiewicz* (1984), 124 Ill. App. 3d 487, 464 N.E.2d 751.) Since defendants acquired their beneficial interests and control of the subject property through the will of Paul Butler, Paul Butler's admissions concerning the value of the subject property were admissible against defendants. In addition, these statements as to a residential value were relevant to the issue of value because plaintiff's theory was that the subject property had a highest and best use as residential. Although Paul Butler's statements as to value were made five to six years prior to the valuation date of April 9, 1984, this fact alone is insufficient to exclude the statements. (See *Metropolitan Sanitary District v. Industrial Land Development Corp.* (1970), 121 Ill. App. 2d 393, 257 N.E.2d 532 (held not error to admit evidence of sale price of subject property four or five years prior to petition to condemn).) In *Metropolitan,* the court stated that remoteness in time cannot be considered alone, but that all the facts and circumstances of each case must be considered. (*Metropolitan Sanitary District,* 121 Ill. App. 2d 393, 257 N.E.2d 532.) The trial court abused its discretion in excluding Paul Butler's statements concerning the value of the subject property because in our view they were sufficiently relevant and probative to warrant admission as an admission against interest. However, the error does not require reversal.

■■ The trial court's exclusion of Paul Butler's statements as to residential value was not prejudicial to plaintiff. In a condemnation proceeding, the improper admission or exclusion of a value witness will not constitute reversible error when there is other evidence of value on both sides and the jury is given the opportunity to weigh the conflicting evidence. (*Lake County Forest Preserve District v. Frecska* (1980), 85 Ill. App. 3d 610, 407 N.E.2d 137.) In the instant case, plaintiff's three expert witnesses on value testified to values of the subject property as being between $1,569,600 and $1,775,000.

Paul Butler's statements of $40,000 to $60,000 per acre translate to a value between $1.3 million and $1.9 million for the subject property. Paul Butler's statements would have added little to the testimony of value already given by plaintiff's experts. Further, the jury was presented with two conflicting theories. Plaintiff's theory was that the subject property had a highest and best use as residential and, as such, was worth approximately $1.7 million. Defendants' theory was that the subject property had a highest and best use as commercial and, as such, was worth approximately $17 million. It is reasonable to conclude that the jury's verdict of approximately $17 million indicates the jury accepted defendants' argument that the highest and best use of the subject property was commercial. In light of plaintiff's three expert witnesses as to the value of the subject property, and the fact that the jury agreed with defendants' argument that the subject property had a highest and best use as commercial property, the erroneous exclusion of Paul Butler's statements as to residential value was harmless error. *Lake County Forest Preserve District*, 85 Ill. App. 3d 610, 407 N.E.2d 137.

SALE OF 12 ACRES

 Plaintiff argues the trial court erred in granting defendants' motion *in limine* to exclude evidence of the sale by the Butler Company of 12 acres of land to plaintiff for $527,000. Plaintiff sought to introduce this sale as a comparable sale to show the value of the subject property for residential uses. Defendants' motion sought to exclude the sale because it was made under threat of condemnation and did not reflect fair market value of the subject property. "It is a well-established doctrine that the amount of condemnation awards or purchase price under threat of condemnation are not admissible as evidence because they are the result of forced transactions rather than voluntary ones." (*Department of Public Works & Buildings v. Kelly* (1976), 40 Ill. App. 3d 896, 912, 353 N.E.2d 195, 207; *South Park Commissioners v. Ayer* (1908), 237 Ill. 211, 86 N.E. 704 (a sale made under threat of condemnation is in the nature of a compromise and is not competent evidence in determining the fair market value of a comparable piece of property).) Plaintiff passed a resolution to condemn the 12 acres owned by the Butler Company on January 12, 1981. Negotiations between plaintiff and the Butler Company proceeded unsuccessfully, and in June 1981, plaintiff filed suit to condemn the 12 acres. The suit was dismissed by plaintiff after the estate of Paul Butler agreed to sell the property to plaintiff for $527,000 in August 1981. The trial court found the sale to be under the threat of

condemnation and not admissible as a comparable sale. The trial court's ruling, excluding the 12-acre sale by defendants made under the threat of condemnation, was not error. *Kelly*, 40 Ill. App. 3d 896, 353 N.E.2d 195.

"GAZEBO" PROPERTY

Plaintiff also argues it was error for the trial court to over-rule plaintiff's objection to defendants' cross-examination of plaintiff's witness concerning the "Gazebo" sale. The "Gazebo" property, which is approximately three-quarters of an acre, was purchased by plaintiff in November 1983. Plaintiff's witness testified to this fact on direct examination. Defendants cross-examined plaintiff's witness on this sale without objection from plaintiff until defendant asked for the purchase price of the "Gazebo." At this point, the record indicates a side-bar conference occurred at which plaintiff argued that the "Gazebo" sale involved "a half acre piece of property with a commercial use as of the time its purchased [*sic*]; certainly not relevant to value on [*sic*] the piece, the 34 acres or so that [*sic*] zoned residential at the time." Defendants replied that it was relevant. Defendant argued that the price paid for the "Gazebo" property, which was approximately three-quarters of an acre with a commercial use, was relevant to the amount of damages to the remainder, which was .8 acre and under defendants' theory had a highest and best use as commercial property. We agree. The trial court's ruling that the testimony was relevant and, therefore, admissible was not an abuse of discretion. (*Department of Conservation v. Aspegren Financial Corp.* (1978), 72 Ill. 2d 302, 381 N.E.2d 231.) Plaintiff's arguments on appeal that the "Gazebo" sale was improperly admitted for other reasons were waived by plaintiff's failure to raise these grounds in the trial court. *Psye v. Byrd* (1983), 115 Ill. App. 3d 1003, 450 N.E.2d 1374.

"MASTER PLAN" OF DU PAGE COUNTY

Plaintiff contends the trial court erred in admitting the 1985 "Master Plan" of Du Page County. Defendants' expert testified to his reliance on the plan. Plaintiff's experts were cross-examined about their knowledge of the plan. The testimony of the experts established that the county often helps municipalities with their planning; that municipal input is a key element of the consideration upon which the "Master Plan" is developed; that the plan was not binding on the Village of Oak Brook; that the plan attempts to minimize conflicts between different land uses and environmental impact; that the "Master Plan" indicated the highest and best use of the subject property was

commercial. Plaintiff did not object to any of this testimony. Plaintiff did object when defendants' sought to introduce the "Master Plan" itself into evidence. Plaintiff objected to the relevance of the "Master Plan" in showing a highest and best use of the subject property as commercial.

On appeal, plaintiff argues that the "Master Plan" was adopted February 1985, after the relevant valuation date of April 9, 1984, and, therefore, it is not relevant to a determination of the highest and best use of the property on the valuation date and should have been excluded. Although the "Master Plan" at issue was adopted approximately nine months after the April 9, 1984, valuation date, the testimony elicited concerning the plan indicated that the plan, although not binding upon the Village of Oak Brook, was being developed based on facts and circumstances which existed in 1984, that knowledgeable planning officials developed this plan, and the plan indicated a highest and best use of the subject property as commercial. In light of this testimony concerning the time period upon which the Du Page County "Master Plan" was based, the trial court did not abuse its discretion in admitting the plan over plaintiff's objection. *Board of Junior College District No. 515 v. Wagner* (1971), 3 Ill. App. 3d 1006, 279 N.E.2d 754 (trial court did not abuse its discretion in admitting testimony concerning designation of property seven months after valuation date).

## II. JURY INSTRUCTIONS

### REASONABLE PROBABILITY OF REZONING

Plaintiff claims the trial court erred in refusing to give plaintiff's tendered instruction No. 12 on the issue of reasonable probability of rezoning. Plaintiff's instruction No. 12 reads as follows:

> "It is proper to base value upon the highest and best use permitted, not only under existing but also under other zoning classifications where there is a reasonable probability of obtaining legislative relief in the near future. The burden of proof of the reasonable probability of rezoning is on the landowner."

The trial court refused this non-IPI instruction stating it had a "problem" with the first sentence. The trial judge said he would be available the next morning if either party wished to tender further or revised instructions. The next morning plaintiff resubmitted the same instruction with no changes, and the trial judge again rejected plaintiff's instruction No. 12. The trial court has considerable discretion in determining the form in which a jury instruction shall be given.

(*Agrico Chemical Corp. v. Forreston Fertilizer Co.* (1975), 32 Ill. App. 3d 986, 337 N.E.2d 76.) Where there is evidence to support a party's theory, the party is entitled to have the jury instructed on its theory of the case. (*Agrico Chemical Corp.*, 32 Ill. App. 3d 986, 337 N.E.2d 76.) However, a party is required to tender a proper instruction (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664), and it is not the duty of the trial court to prepare or amend instructions. *Fornoff v. Parke Davis & Co.* (1982), 105 Ill. App. 3d 681, 434 N.E.2d 793.

■■■ Plaintiff's instruction No. 12 is a correct statement of the applicable law. (*Department of Public Works & Buildings v. An Association of Franciscan Fathers* (1977), 69 Ill. 2d 308, 371 N.E.2d 616 (where evidence on the issue of reasonable probability of rezoning is admitted at trial, party relying on this theory is entitled to have separate jury instruction on the issue); *Department of Transportation v. Western National Bank* (1976), 63 Ill. 2d 179, 347 N.E.2d 161 (burden of proof on issue of reasonable probability of rezoning is on the landowner).) However, even when an instruction correctly states the law, it may not be given where it misleads or confuses the jury. (*Graves v. Wornson* (1978), 56 Ill. App. 3d 873, 371 N.E.2d 692.) Plaintiff's tendered instruction contains the generic term "legislative relief." This term may be clear to attorneys and others familiar with legal terminology; however, this term is not necessarily clear to a jury and could cause it to believe that action by the State legislature was required. "Legislative relief" could encompass many actions beside rezoning. In the instant case, the term "legislative relief" was not used at trial. More significantly, it was not used in the context of reasonable probability of rezoning. The issue before the jury involved the reasonable probability of a zoning change by the trustees of the Village of Oak Brook. In the context of this case, the trial court could have properly found the term "legislative relief" would be misleading and confusing to the jury. The trial court did not abuse its discretion in refusing plaintiff's instruction No. 12.

DAMAGE TO REMAINDER

■■ Plaintiff argues the trial court erred in giving defendants' and not plaintiff's tendered instruction on damages to the remainder. Plaintiff argues that the giving of defendants' instruction instead of plaintiff's prejudiced plaintiff by failing to present plaintiff's theory that the remainder was not damaged at all. Instead, defendants' instruction implies that plaintiff admits damage to the remainder and only disputes the amount of damage. Plaintiff's instruction was Illi-

nois Pattern Jury Instructions, Civil, No. 300.11 (2d ed. 1971) (hereinafter IPI Civil 2d No. 300.11), which provides in relevant part:

"The defendant has filed a cross petition claiming that the remainder will be [has been] damaged by the taking. Plaintiff denies that there will be [has been] any damage to the remainder.

You are to decide the following questions:

First, what is the amount of just compensation to be paid the defendant for the property which will be [has been] taken.

Second, [will] [has] the remainder [be] [been] damaged by the taking and, if so, then,

Third, what is the amount of money which will reasonably and fairly compensate the defendant for that damage."

Defendants' instruction, given by the trial court, was Illinois Pattern Jury Instructions, Civil, No. 300.12 (2d ed. 1971) (hereinafter IPI Civil 2d No. 300.12), which provides in relevant part:

"The defendant has filed a cross petition claiming that the remainder will be [has been] damaged by the taking. Plaintiff denies damage in the amount claimed.

You are to decide the following questions:

First, what is the amount of just compensation to be paid the defendant for the property which will be [has been] taken.

Second, what is the amount of money which will reasonably and fairly compensate the defendant for damage to the remainder."

The comments to these two instructions make it clear that where the plaintiff denies any damage to the remainder, IPI Civil 2d No. 300.11 is the proper instruction. (Illinois Pattern Jury Instructions, Civil, Nos. 300.11, 300.12, Comments (2d ed. 1971).) The record shows plaintiff's theory included a denial of any damage. Two of plaintiff's three experts testified that the remainder was not damaged at all. In addition, defendants' instruction should not have been given because it assumes damage, which was a disputed fact that the jury should have been allowed to resolve. (*Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 437 N.E.2d 872.) The trial court erred when it gave defendants' instruction instead of plaintiff's on the issue of damage to the remainder.

■■■ However, plaintiff is not entitled to have a reversal of the trial court unless plaintiff was prejudiced by the trial court's improper refusal of plaintiff's tendered instruction. (*Kohutko v. Four Columns, Ltd.* (1986), 148 Ill. App. 3d 181, 498 N.E.2d 522.) Plaintiff argues that the trial court's error in giving defendants' instruction on damage denied plaintiff a fair trial. In such an instance, the question be-

fore us on review is whether there is a reasonable basis for a conclusion that, but for the error, the verdict might have been different. (*Sale v. Allstate Insurance Co.* (1984), 126 Ill. App. 3d 905, 467 N.E.2d 1023.) In the instant case, the jury was presented with two conflicting theories: (1) plaintiff's theory that the subject property had a highest and best use as residential, and the remainder, as residential property, was damaged between $0 and $19,200; and (2) defendants' theory that the highest and best use of the subject property was commercial and the remainder as commercial was damaged to the extent of $278,752. Defendants' instruction (IPI Civil 2d No. 300.12), as well as plaintiff's instruction (IPI Civil 2d No. 300.11), which was refused, along with the other instructions given by the trial court, presented the issue of the value of the property taken *before* the issue of damage to the remainder. The jury returned a verdict of $17,063,196 as to the value of the property taken. This was the exact amount testified to by defendants' expert. It is clear that the jury accepted defendants' theory that the highest and best use of the total parcel was commercial. Plaintiff's theory of zero damage was based on plaintiff's theory of residential use as the highest and best use. Plaintiff argued this theory to the jury in closing argument, including its argument of no damage to the remainder. In light of the fact that the issue of highest and best use was the determinative issue in the case and was extensively argued to the jury, and the fact that the jury returned a verdict on the value the subject property taken which accepted defendants' theory of a commercial use, any error in failing to give plaintiff's instruction denying any damage to the remainder based on the residential use theory was harmless error.

### III. FINAL ARGUMENT

Plaintiff's last contention on appeal is that defendants' final argument to the jury was improper and prejudiced plaintiff's right to a fair trial. Plaintiff takes issue with numerous arguments made by defendants in their final argument. Plaintiff, however, only objected once during defendants' final argument. First, we address the one argument of defendants to which plaintiff objected during closing argument and on which the trial court had a chance to rule at the time the statements were made.

#### IMPROPER MOTIVES

Plaintiff argues that defendant improperly argued that plaintiff had improper motives in condemning defendants' property, specifically, to interfere with defendants' plans for the property. Plaintiff's

objections to defendants' argument were overruled. Determination of what comments of counsel are prejudicial to a party's right to receive a fair trial is a matter resting within the sound discretion of the trial court, and the trial court's ruling will not be disturbed unless there is a clear abuse of discretion. (*Carlasare v. Wilhelmi* (1985), 134 Ill. App. 3d 1, 479 N.E.2d 1073.) Plaintiff's arguments during trial invited defendants' statements in closing argument. Plaintiff elicited testimony from witnesses that neither the Butler Company nor defendants ever sought a rezoning of the subject property for commercial uses. Plaintiff reiterated this evidence in closing argument to show that the highest and best use of the subject property was not commercial but residential. Defendants in closing argument referred to evidence, which plaintiff stipulated to prior to trial, that defendants had developed a preliminary report on developing the subject property for commercial uses dated November 4, 1983, and that the Park District's resolution authorizing the taking at issue occurred on November 28, 1983. Defendants' argument, which was quite vigorous, sought to rebut plaintiff's inferences that the property did not have a highest and best use as commercial as evidenced by the absence of any action on the part of defendants to rezone the property for commercial development.

In addition, we do not find defendants' statements questioning the motives of plaintiff to be equivalent to the closing arguments discussed in the authority cited by plaintiff. (See *Department of Conservation v. Strassheim* (1981), 92 Ill. App. 3d 689, 415 N.E.2d 1346.) In *Strassheim*, the court found defendants' closing arguments prejudicial for inviting the jury to decide the case in a punitive fashion; however, the court did not reverse on that ground. (92 Ill. App. 3d at 695, 415 N.E.2d at 1352.) In light of the vigorously contested issues of a reasonable probability of rezoning and highest and best use, and the frequent heated and emotional argument of both parties, the trial court's overruling of plaintiff's objections to defendants' statements in closing argument was not an abuse of discretion.

▪▪ Next, we address plaintiff's contentions that defendants made numerous statements in closing argument, which although unobjected to at the time by plaintiff, were so prejudicial to plaintiff that plaintiff was denied a fair trial. It has been consistently held that experienced counsel cannot take a chance of failing to make objections and then, upon receiving an adverse jury verdict, claim error. (*County of Cook v. Colonial Oil Corp.* (1958), 15 Ill. 2d 67, 153 N.E.2d 844.) However, while failing to object timely to closing argument may result in a waiver of the claimed prejudice, a party who fails to make

a timely objection to arguments of counsel may be entitled to a new trial, if the unobjected-to argument was so prejudicial that the party was denied a fair trial. (*Department of Transportation v. Roodhouse* (1982), 104 Ill. App. 3d 880, 433 N.E.2d 703.) We have reviewed the record and closing argument by both parties as well as the authority cited by both plaintiff and defendants, and we do not agree with plaintiff that plaintiff was denied a fair trial as a result of defendants' closing argument.

## COVENANTS AND RESTRICTIONS

Plaintiff argues that defendants' statements concerning the covenants and restrictions were in violation of defendants' own motions *in limine*. Plaintiff's argument is based on a mischaracterization of the trial court's rulings and is not supported by the record. We find no merit to plaintiff's contention that defendants' closing argument violated any of the trial court's prior rulings on defendants' motions *in limine*.

## FAILURE TO CROSS-EXAMINE DEFENDANTS' EXPERT

Nor do we agree with plaintiff's contentions that defendants' closing argument improperly commented on plaintiff's failure to cross-examine defendants' expert McCann on certain prior testimony given in another case and plaintiff's failure to cross-examine McCann on prior appraisals for the Department of Transportation. Plaintiff did extensively cross-examine McCann as to his prior testimony in another case concerning his opinion of highest and best use of property located near the subject property. As to McCann's other appraisals for the Department of Transportation, plaintiff states defendants' argument "presupposes that it would have been proper to cross-examine on these sales or other appraisals." Plaintiff on appeal argues that it would have been improper for plaintiff to cross-examine on these "other sales and appraisals." Plaintiff never attempted to cross-examine McCann on these "other sales or appraisals," and the record does not show whether such cross-examination would have been improper. Plaintiff's argument asks this court to presuppose that such cross-examination would have been improper. Plaintiff's argument, along with the record, fails to support the drawing of such a conclusion. Accordingly, we do not find this portion of defendants' argument to have been prejudicial to plaintiff.

## CHARACTERIZATION OF PLAINTIFF'S WITNESSES

Plaintiff also contends that defendants' closing argument

improperly characterized plaintiff's witnesses as being biased and of perpetrating a scandal. While we do not condone defendants' arguments, we do not feel that under the circumstance plaintiff was prejudiced by this portion of defendants' closing argument so that plaintiff was denied a fair trial. In the instant case, the credibility of the experts was extensively and vigorously argued by both sides. Plaintiff referred to defendants' expert as being "like a fish out of water" when it came to appraising property in Oak Brook. Defendants referred to the fact that plaintiff's experts lived in Oak Brook and did a substantial amount of their work in Oak Brook and that they might be biased and unlikely to give an opinion unfavorable to the Park District in the instant case. This part of defendants' argument was not improper. (*Department of Public Works & Buildings v. Anastoplo* (1958), 14 Ill. 2d 216, 151 N.E.2d 337.) However, defendants' sarcastic scenario of plaintiff's experts meeting at the country club with president Cerne and defendants' statement, "Those are the things that scandals are made of when you bring in neighbors to appraise neighbor's property. You don't do that," were clearly improper and not based on any evidence in the record. (*Department of Public Works*, 14 Ill. 2d 216, 151 N.E.2d 337.) While the characterization of plaintiff's experts in defendants' argument stretched the bounds of proper argument, the jury was instructed prior to closing arguments that counsels' statements were not evidence and that the jury was to decide from the evidence the disputed issues of fact. Plaintiff relies on *County of Cook v. Vulcan Materials Co.* (1959), 16 Ill. 2d 385, 158 N.E.2d 12, to support its argument that defendants' statements were sufficiently prejudicial to require a new trial. We do not agree. In *Vulcan Materials*, the defendant severely and repeatedly ridiculed and belittled plaintiff's witnesses and plaintiff's theory throughout his argument. (*Vulcan Materials*, 16 Ill. 2d 385, 158 N.E.2d 12.) In the instant case, defendants' improper argument occurred only once and did not pervade the trial strategy or closing argument of defendants. The issues and evidence were extensively and vigorously argued by both parties. Further, the jury viewed the subject property. We conclude that defendants' unobjected-to statements did not rise to the level of prejudice sufficient to deny plaintiff a fair trial. (*Vulcan Materials*, 16 Ill. 2d 385, 158 N.E.2d 12.) Where the jury has viewed the subject property and has returned a verdict within the range of the evidence, that verdict will not be upset unless it can be clearly established that it resulted from passion, prejudice or palpable mistake. (*Park District of Highland Park v. Becker* (1965), 60 Ill. App. 2d 463, 208 N.E.2d 621.) We are satisfied that this case was fairly tried and

that the verdict was not the result of passion, prejudice or palpable mistake.

We affirm the judgment of the circuit court of Du Page County.

Affirmed.

INGLIS and HOPF, JJ., concur.